521 So.2d 1071 (1988)
John Gary HARDWICK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 68769.
Supreme Court of Florida.
February 4, 1988.
Rehearing Denied April 8, 1988.
*1072 Clyde M. Collins, Jr., Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen. and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
BARKETT, Justice.
John Gary Hardwick, Jr., appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and sentence.
On Christmas Eve morning 1984, a fisherman discovered the body of Keith Pullum floating in the St. Johns River near Jacksonville. Pullum had died of a gunshot and stab wounds, and had been beaten about the head. Michael Hyzer, a friend of both the appellant John Hardwick and the victim, contacted police on Christmas Day and told them of a conversation with Hardwick. According to Hyzer, Hardwick said he had shot and stabbed Pullum earlier in the week for stealing Quaaludes, and then had thrown the body in the river. Shortly thereafter, Hardwick was arrested and charged with murder.
During the guilt phase at trial, arresting officers testified to a number of statements Hardwick made allegedly corroborating Hyzer's initial statement. Hardwick purportedly volunteered that some of his Quaaludes were missing. Two detectives testified that Hardwick said "a man can't go around robbing dope dealers and not expect to get killed." A number of Hardwick's friends and drug customers also corroborated *1073 Hyzer's statement. One man, Jeffrey Showalter, said he had seen Hardwick in the company of the victim on December 23, and that Hardwick had threatened to kill the victim or Showalter if his Quaaludes were not returned in an hour. Showalter also testified that, shortly before the murder occurred, he saw Hardwick driving up behind Pullum in a car and slow down, although he was not sure that Pullum got into the car.
Several other witnesses also testified that Hardwick had complained about the theft of his Quaaludes and had threatened to kill the victim, or later had bragged about "taking care" of the individual who took his Quaaludes.
The medical evidence at trial indicated that the victim was stabbed three times in the chest and back, then shot in the lower right back and then struck about the head. According to this testimony, the victim became unconscious within five to six minutes of being stabbed. The blows to the head apparently occurred immediately after death, since there was almost no bleeding from the resulting wounds. There was some evidence the victim's hands had been bound, but the medical examiner could not say with certainty that this had happened.
The defense confined its presentation solely to the proffered testimony of David Buettner, a sailor. Buettner said he had told his superior officer that he and two other military men took a young man to a wooded area in Jacksonville, beat him, stabbed him in the back and shot him. The motive was that the victim allegedly had seduced the men's wives while they were at sea. On cross examination, Buettner admitted that the story was a fabrication, allegedly based on a statement made to Buettner by someone called "Banana Man." He further testified that he had told his superior officer that the killing took place in February 1985. The state's objection to this testimony was sustained, and the defense presented no other witnesses.
During the course of the proceedings below, Hardwick complained to the court about the alleged incompetence of his trial counsel. The court conducted hearings on this question. On each occasion, Hardwick stated that he felt unable to conduct his own trial, but would rather do so than proceed with his court-appointed counsel. However, Hardwick also emphasized that he did not wish to act pro se. Partly because of the ambiguity of Hardwick's statements, the court denied Hardwick's requests.
The jury found Hardwick guilty of first-degree murder. At the penalty phase, the state called no witnesses, but presented evidence of prior convictions reflecting violent felonies. The state offered no other evidence of aggravating factors, and the appellant presented no witnesses or evidence in support of mitigating factors.
The jury returned an advisory sentence recommending death on a seven-to-five vote. The trial court adjudicated Hardwick guilty of first-degree murder and sentenced him to death after finding no statutory or nonstatutory mitigating factors and five aggravating circumstances: (1) prior violent felony convictions, (2) the murder was committed during a kidnapping, (3) the murder was for pecuniary gain, (4) the murder was heinous, atrocious and cruel, and (5) the murder was cold, calculated and premeditated.
Hardwick raises eight issues on appeal. First, Hardwick argues that the trial court improperly excluded the testimony regarding "Banana Man" by precluding Buettner's proffered direct testimony. During the proffer, Buettner testified under oath that he largely had fabricated the entire account, filling in details from what he had seen on television. No other evidence was ever presented that Banana Man existed or had participated in a murder. Moreover, the date of the murder purportedly committed by Banana Man was early February 1985, more than a month after the murder of Pullum. We find substantial evidence in this record that this testimony was unreliable and irrelevant, and therefore hold that the trial court did not abuse its discretion to exclude. See Welty v. State, 402 So.2d 1159, 1162-63 (Fla. 1981); Booker v. State, 397 So.2d 910, 914-15 *1074 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981).
As his second issue, Hardwick argues that the trial court improperly refused to let him represent himself in violation of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court found the defendant incompetent to represent himself saying:
THE COURT: OKAY,
For the record I am going to find Mr. Hardwick is not, although he does understand the dangers and disadvantages of self-representation, that he is not capable of adequately representing himself, and that he  I am not of the opinion that based on what I hear that he is actually asking to represent himself.
I will find the defendant is asking that [defense counsel] be relieved and another attorney appointed, which is not required. His statement if I do that I'm forcing him to represent himself I think is nullified by the fact he says he is not competent to represent himself and he doesn't want to.
We recognize that, when one such as appellant attempts to dismiss his court-appointed counsel, it is presumed that he is exercising his right to self-representation. Jones v. State, 449 So.2d 253, 258 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). However, it nevertheless is incumbent upon the court to determine whether the accused is knowingly and intelligently waiving his right to court-appointed counsel, and the court commits reversible error if it fails to do so. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541; Smith v. State, 444 So.2d 542 (Fla. 1st DCA 1984). This particularly is true where, as here, the accused indicates that his actual desire is to obtain different court-appointed counsel, which is not his constitutional right. Donald v. State, 166 So.2d 453 (Fla. 2d DCA 1964).
The record before us reflects that the trial court construed Hardwick's comments as effectively requesting self-representation, albeit equivocally, and made the appropriate inquiry. The court examined the defendant's ability to make a knowing and intelligent waiver, his age and mental status, and his lack of knowledge or experience in criminal proceedings. Johnston v. State, 497 So.2d 863, 868 (Fla. 1986). We find no error in the trial court's procedure or its findings.
We note that the courts have long required that a request for self-representation be stated unequivocally. Chapman v. U.S., 553 F.2d 886, 892 (5th Cir.1977). See Faretta, 422 U.S. at 835-36, 95 S.Ct. at 2541. The record here reflects that Hardwick repeatedly asked for new counsel, admitted his incompetence to conduct the trial, and stated that "I'm not choosing to represent myself." Although vacillation on the question of self-representation has been held a sufficient grounds for denying the request, Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir.1982); United States v. Bennett, 539 F.2d 45, 50-51 (10th Cir.), cert. denied, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), the trial court gave the defendant every benefit of the doubt and made the proper inquiry. We conclude that the court below did not err in refusing to dismiss court-appointed counsel, appoint Hardwick as co-counsel or permit Hardwick to represent himself.
Appellant also argues that his right to counsel was impaired by the incompetence of his court-appointed attorney. In this instance, the request was made before trial began and renewed by Hardwick during the trial. On this question, we approve the procedure adopted by the Fourth District:
If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the *1075 record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Nelson v. State, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973) (citation omitted). In the present case, we find no error. The trial court mate a proper inquiry, allowed the defendant to state his reasons for asserting his claims, and specifically found that defense counsel was competent as to those reasons. Since nothing in the record otherwise establishes defense counsel's incompetence as alleged by Hardwick in his motion, we therefore may not disturb the trial court's finding.
As his third issue, Hardwick argues that the trial court improperly restricted cross examination of Detective Charles Kesinger. This cross examination was designed to elicit information Buettner allegedly told the police about "Banana Man" and the murder this otherwise unidentified person purportedly committed. We find that the trial court properly exercised its discretion to exclude this testimony as unreliable and irrelevant hearsay. See Welty; Booker. Moreover, we find that the court provided the defense more than ample opportunity to question Kesinger about whether other murder suspects existed.
Fourth, Hardwick argues that the witness sequestration rule was violated to such a degree as to require mistrial. We agree that the appearance of impropriety existed, since witnesses apparently talked freely among themselves while waiting to testify. However, we find that the court conducted a proper inquiry into the matter and did not err in concluding that no actual and prejudicial impropriety had occurred serious enough to warrant mistrial. See Cobb v. State, 376 So.2d 230, 232 (Fla. 1979).
Fifth, Hardwick contends that he had a right to a jury instruction on intoxication. We find no error in the trial court's decision to deny such an instruction, since Hardwick failed to establish on this record that he was intoxicated at the time of the murder. See Link v. State, 429 So.2d 836, 837 (Fla. 3d DCA 1983). Indeed, the testimony of Showalter and several other witnesses was to the contrary. Hardwick failed to rebut this testimony at any time during the guilt phase of the trial.
As his sixth issue, Hardwick argues that the state's case was based on circumstantial evidence and that the state failed to eliminate other reasonable hypotheses of innocence, requiring us to reverse his conviction. Davis v. State, 90 So.2d 629 (Fla. 1956). We disagree that the case was circumstantial, since Hyzer and others testified that Hardwick had confessed to the murder or told others of his plans in advance of the killing. A confession of committing a crime is direct, not circumstantial, evidence of that crime. Dunn v. State, 454 So.2d 641 (Fla. 5th DCA 1984). See McCormick, Handbook of the Law of Evidence § 185 (2d ed. 1972). Moreover, in light of Hardwick's confessions, we find that the trial court could have concluded that no reasonable hypotheses consistent with innocence existed.
Seventh, Hardwick contends that the trial court reached improper conclusions on the aggravating and mitigating factors in this record. We agree that the trial court erred in finding that the killing was committed during a kidnapping and was for pecuniary gain. Each of these factors requires proof beyond a reasonable doubt, not mere speculation derived from equivocal evidence or testimony.
We find no evidence beyond a reasonable doubt that Pullum was kidnapped, nor did the state charge Hardwick with this offense. Contrary to the trial judge's findings, there was no evidence in the record that Pullum was abducted. The testimony as to how Pullum ended up in Hardwick's company was at most equivocal. Moreover, the medical examiner said he believed, but was unsure, that Pullum's hands had been tied. On further questioning, the medical examiner said Pullum's arms may only have been held behind his back at the time he was shot. This equivocal evidence is insufficient to support a *1076 finding beyond a reasonable doubt that a kidnapping had occurred.
We also find no proof beyond a reasonable doubt that the killing was for pecuniary gain. Although there was evidence that Hardwick killed Pullum for stealing Quaaludes, this fact alone does not establish that the killing itself was to obtain financial gain. In the past, we have permitted this aggravating factor only where the murder is an integral step in obtaining some sought-after specific gain. Rogers v. State, 511 So.2d 526, 533 (Fla. 1987). See Simmons v. State, 419 So.2d 316 (Fla. 1982). Since any financial advantage Hardwick could have expected in this case at most was indirect and uncertain, we cannot conclude that this aggravating factor existed beyond a reasonable doubt.
We perceive no error in the three other aggravating factors found by the court. Neither party disputes the fact that appellant previously was convicted of violent felonies. Moreover, this record reflects proof beyond a reasonable doubt that Hardwick's decision to kill Pullum was based on calculation and prearranged design, see Rogers, 511 So.2d at 533, since there is clear evidence that he announced his intention to others in advance of the murder. This evidence establishes beyond a reasonable doubt the heightened premeditation necessary for this aggravating factor.
We also agree that the killing was heinous, atrocious and cruel. This factor requires evidence that the killing was so unnecessarily torturous, conscienceless or pitiless as to set the crime apart from the norm of capital felonies. State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied sub nom. Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The medical examiner testified that Pullum was conscious as long as six minutes after the initial wound was inflicted. During this time, he was repeatedly stabbed, then was shot and beaten. Under these facts, we thus find the evidence sufficient to establish heinousness, atrociousness and cruelty. See Doyle v. State, 460 So.2d 353, 357 (Fla. 1984); Adams v. State, 412 So.2d 850, 857 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982).
As to the mitigating factors, Hardwick argues that the trial court failed to find in mitigation that he was impaired through drug or alcohol abuse. We agree that such evidence must be considered in mitigation, Fead v. State, 512 So.2d 176, 178 (Fla. 1987); Cannady v. State, 427 So.2d 723, 731 (Fla. 1983); Buckrem v. State, 355 So.2d 111, 113-14 (Fla. 1978), especially where established by uncontroverted factual evidence in the record. Brannen v. State, 94 Fla. 656, 661-62, 114 So. 429 (1927); Merrill Stevens Dry Dock Co. v. G & J Investments Corp., Inc., 506 So.2d 30, 32 (Fla. 3d DCA 1987); White v. Acker, 155 So.2d 176, 177 (Fla. 1st DCA 1963); Robertson v. Robertson, 106 So.2d 590, 593 (Fla. 2d DCA 1958); Kinney v. Mosher, 100 So.2d 644, 646 (Fla. 1st DCA 1958).
However, this record contains nothing beyond a mere implication that Hardwick suffered from drug or alcohol dependency. Appellant presented no evidence or testimony from qualified witnesses during either the guilt or penalty phases of trial. The only evidence remotely touching on this question was from several lay witnesses, friends or acquaintances of appellant, who testified that on certain occasions he had used drugs and alcohol, had Quaaludes in his possession and sold drugs to others. Nothing suggests that appellant's use of intoxicants had reached the level of a continuing impairment to any degree or that he actually was impaired at the time of the killing. Indeed, there was testimony to the contrary. We therefore cannot fault the trial court for failing to find this factor in mitigation, since it was not established by any significant evidence in the record.[*]
Because we have found error in the weighing of aggravating and mitigating factors, we must determine whether this error was harmless. The record before us reflects three valid aggravating factors *1077 and no valid mitigating factors. This alone is not dispositive. We are persuaded, however, that our reversal of the invalid aggravating factors would not have altered the result in light of the particular valid aggravating factors remaining in this case and the absence of any mitigating factors. We, therefore, must conclude that the error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986); Doyle; Dixon.
As his eighth and final argument, Hardwick contends that the trial court erred in finding that the murder was both heinous, atrocious and cruel, and cold, calculated and premeditated, based on the same facts. We cannot agree since, in this case, these factors rest on separate factual predicates. The factor of heinous, atrocious and cruel arises from the means actually employed in the killing; the factor of cold, calculated and premeditated refers to the degree of calculation and planning that preceded the killing. Both of these separate predicates plainly exist on this record.
Based on the foregoing, the conviction and sentence are affirmed.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[*] Mitigating evidence need not be established beyond a reasonable doubt. See State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).