667 So.2d 982 (1996)
Donald MORRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1956.
District Court of Appeal of Florida, Fourth District.
February 14, 1996.
*983 Peter D. Lent, Ft. Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia Ann Ash, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING OR CLARIFICATION
KLEIN, Judge.
We withdraw our previous opinion filed December 20, 1995, 21 Fla.L.Weekly D33 (Fla. 4th DCA Dec. 20, 1995), and substitute the following opinion, in order to add a paragraph before the last three sentences of the opinion.
Appellant, who was convicted of 2 counts of sexual battery on a child less than 12 years old, and 2 counts of indecent assault, persuaded the trial court that he was entitled to represent himself, but now argues that his convictions should be reversed because he did not waive his right to counsel. We conclude that the court made a sufficient inquiry under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and that there was a waiver.
Most of the cases involving this issue are ones in which the defendant is dissatisfied with court-appointed counsel, which requires a Nelson[1] hearing in addition to a Faretta hearing. In the present case, appellant advised the court at his arraignment that he did not want counsel, and accordingly a Nelson hearing was unnecessary. When the court asked whether he could afford a lawyer, appellant responded: "Sir, I plan to stand in my own defense." The court then suggested that appellant should have a lawyer just as he would use a mechanic to repair his car or an electrician to repair his wiring. Appellant responded that he felt "comfortable in defending myself." He continued "[s]imply, I don't feel comfortable with the P.D."
In response to the court's inquiry about his education, appellant who is in his 40's, replied that he had a high school diploma but no college degree. The court asked whether he had taken any law courses or knew the rules of evidence and appellant responded in the negative, but appellant stated that he knew how to select a jury from research in the jail law library. The judge responded that he had read books about football but that did not make him ready for the Super Bowl, and asked appellant if he was ready for his "Super Bowl" to which appellant responded in the affirmative. The court then explained that the charge, sexual battery of a child under the age of 11, is "as serious as it gets," and that punishment was a mandatory life sentence. Appellant responded that he understood. The arraignment concluded with the court advising appellant as follows:
THE COURT: ... If you change your mind and you want the assistance of a highly trained lawyer in this most crucial of life decision, let me know. I'll assist you. I can't force you to have a good judgement. The law doesn't go that far.
You are a citizen, and if you wish to maintain yourself as your own counsel, even though anybody sitting here would say that's the worse judgement and decision you can ever make, that's up to you.
If you change your mind though, I am available to give you the assistance of counsel, but you do have enough education to make a foolish decision. That's your decision.
On another day the court, after first reviewing the transcript of the arraignment, *984 again inquired of appellant, who at that time requested that he be assisted by a non-lawyer whose name was Terry Ingram. The court explained to appellant that he had three choices: to represent himself alone, to have an experienced trial attorney represent him, or to represent himself but with the advice of counsel. Appellant responded that he wanted Ingram, that he demanded a grand jury indictment, and claimed that the court did not have jurisdiction over him. The court again explained appellant's options and when he asked appellant if he understood, appellant responded:
MR. MORRIS: I understand that. I have demanded my right under the constitution to counsel of choice, and my counsel of choice is Mr. Terry Ingram, and you seem to overlook that.
The court explained to appellant that he could not be represented by a non-lawyer, and that the court's offer of representation of counsel or advice of counsel would remain open at all times.
At a subsequent pretrial hearing, the court again inquired as to whether appellant desired counsel, and appellant responded:
MR. MORRIS: Again, I do not want the Court appointed Public Defender. I broughtPursuant to Arger versus Hammer[2], I do not, nor have in the past, make a knowing and intelligent waiver of my counsel of choice.
THE COURT: Once again, let's make sure the record is clear. You want me to assign
MR. MORRIS: No, I don't want you to assign anyone.
The court then again explained that appellant could not have a non-lawyer represent him but that he could have a lawyer advise him while appellant conducted his own defense. Appellant responded:
MR. MORRIS: Well, you know as well as I do the minute I get into a contract with a licensed attorney, and this is pursuant to seven corpus juris ac etiam (sic), section two, the contract between a client and his attorney creates a relationship that makes the client a ward of the Court and the attorney his guardian in the eyes of the Court.
Therefore, if I wanted to, if I wanted to accept an attorney, the issue ensuing contract would create a status change in so much as I would be compelled to waive numerous guaranteed constitutional rights. One very important right is my acceptance of a licensed attorney which would give automatic jurisdiction over me, and I will not accept that.
At the beginning of appellant's trial, the court again urged appellant to be represented or assisted by counsel, explaining to him that he needed someone with experience in picking a jury, making objections during trial, making opening statement and final argument, and examining witnesses:
All right. You understand that since you are representing yourself, there are certain pitfalls.
For example, when we bring the panel in. Now, you are not experienced at selecting a jury. You don't really know what kind of questions are, what I would call illuminating questions, which would help you perceive who is a good juror, who wouldn't be a good juror, who would be fair-minded, who wouldn't be fair-minded.
Who means what they say as far as following the law. Asking the right legal questions to make sure that they follow the law.
You are not versed in that, and that's one of the pitfalls that you face by representing yourself, and jury selection is critical to a trial.... You don't really know the rules of evidence.... You willYou won't really know how to give a good opening statement. You are not versed in a final argument which can be very important of how to put everything together.
You won't really know how to advocate your side if you feel that's necessary, or to show the jury that the State's evidence *985 isn't there like an experienced trial lawyer.... You don't know how to give a good opening statement, final argument. You won't know what special instruction should be crafted and should go to the jury, which an experienced trial lawyer would know, based on what happens as the evidence unfolds in this case.
You also have the drawback of going ahead without the depositions of the witnesses so that you can impeach their trial testimony with prior sworn statements that they have given.
I mean, I can go on and on. These are all the impediments that you face, because you have insisted on representing yourself. That's why I still urge you to adopt one of the alternatives suggested.
Be co-counsel with a skilled trial lawyer. That way you are still in charge of the case along with the experienced trial lawyer. And if you don't want to share that obligation with another lawyer, at least allow a lawyer to be here to counsel and give you advice in the courtroom, especially when you are not sure which way to go.
* * * * * *
I have already gone into your background. You are competent. You have come into court every time dressed well, in a three-piece suit every time. You make a good appearance. You are competent. YourOur colloquy is demonstrated to the Court that you are aware of your surroundings. You know what is going on here. You know the consequences of the trial. You are somewhat versed in the law.
After the court again explained he could have counsel, appellant responded:
MR. MORRIS: Yes. I have got to refer back to my original comment and statement in this Court, that this Court apparently assumes that I am here to defend myself against the charges that have been levied against me. That's not to be the case. Again, I state that I am here to defend my rights against the constitution of the United States and my right to a grand jury Indictment.
THE COURT: All right.
MR. MORRIS: I find none of the options that you gave me are acceptable.
THE COURT: Okay.
MR. MORRIS: I have demanded my right to counsel of choice, and pursuant to Arger versus Hammer, I have not, nor shall I waive my right to counsel of choice.
THE COURT: All right.
The court again explained that appellant could not have a non-lawyer represent him, again explained appellant's options for having a lawyer or the assistance of a lawyer, and appellant responded that he wanted the assistance of a lay person.
The court allowed defendant to represent himself in his trial, at which the victim, who was age 7 and referred to appellant as "Uncle Donald," testified that appellant had kissed her buttocks, her breasts and put his fingers in her vagina. Appellant objected to the victim testifying because she was under the influence of drugs (she takes prescribed Ritalin twice a day). The court overruled the objection. Appellant cross-examined her and elicited that she had had a sexual experience with her step brother and had been the victim of a sexual assault by an 11 year old girl.
The state presented hearsay statements which the child made to her mother, a police officer, a psychologist, an expert in child sexual abuse counseling, and a medical expert, all of which corroborated that the victim had been abused. Appellant, who did not cross-examine any of the witnesses other than the victim, did not present any evidence, and did not make closing argument, was convicted on all charges.
Appellant does not argue that his self-representation amounts to a denial of effective assistance of counsel, apparently recognizing that where there is a waiver under Faretta, he cannot make such a claim. 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. Nor does appellant argue that the trial court erred in denying his request to be assisted by a non-lawyer. See Bauer v. State, 610 So.2d 1326 (Fla. 2d DCA 1992). Appellant only asserts that the trial court did not conduct *986 an adequate Faretta hearing so that there was no effective waiver of counsel.
Faretta requires that a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and that his choice is made with eyes open." Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. Rule 3.111(d), Florida Rules of Criminal Procedure (1995), provides:
(2) A defendant shall not be deemed to have waived the assistance of counsel until the entire process of offering counsel has been completed and a thorough inquiry has been made into both the accused's comprehension of that offer and the accused's capacity to make an intelligent and understanding waiver.
(3) No waiver shall be accepted if it appears that the defendant is unable to make an intelligent and understanding choice because of a mental condition, age, education, experience, the nature or complexity of the case, or other factors.
Although the trial court in the present case did not meet all of the above requirements on each of the four occasions when self-representation was discussed, he did inquire about, and explain all of them at least once, and most of them more than once. We therefore conclude that the trial court made a sufficient inquiry under Faretta, and correctly allowed appellant to exercise his right of self-representation.
Appellant also argues that, even if he knowingly and intelligently waived assistance of counsel under Faretta, the trial court must still conduct a hearing in order to determine whether unusual circumstances exist which would deprive defendant of a fair trial if the defendant proceeds pro se. Appellant cites cases which do refer to a fair trial factor, two of which are: Ausby v. State, 358 So.2d 562 (Fla. 1st DCA 1978), and Robinson v. State, 368 So.2d 674 (Fla. 1st DCA 1979). Those cases cited as authority a pre-Faretta decision of this court, Cappetta v. State, 204 So.2d 913 (Fla. 4th DCA 1967). In Cappetta we reversed a conviction on the ground that the trial court erred in denying the defendant the right to represent himself and did suggest a fair trial factor to be considered; however, we were reversed by the Florida Supreme Court which held that Cappetta had waived his right to conduct his own defense. State v. Cappetta, 216 So.2d 749 (Fla.1968). Our supreme court did recognize the general rule that we adopted in Cappetta, but did not mention the fair trial factor:
We are satisfied with the general rule as delineated by the District Court that in the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without counsel by virtue of Section 11, Declaration of Rights, Florida Constitution.
216 So.2d at 750.
Trial judges, when confronted with defendants like this one, are "between a rock and a hard place." Payne v. State, 642 So.2d 111, 113 (Fla. 1st DCA 1994) (Kahn, J., concurring). Under Faretta a trial judge has to be sensitive both to the right to counsel as well as the right to self-representation; however, judges have little leeway in either direction, since there are two constitutional rights at stake here. If a defendant has met the requirements of Faretta for self-representation, but the court denies self-representation because of the court's concern that the defendant's ignorance of the law will result in the defendant not receiving a fair trial, it may well violate Faretta,
In Adams v. Carroll, 875 F.2d 1441 (9th Cir.1989), the state courts denied the defendant self-representation because, although he unequivocally knowingly and intelligently requested it, he admitted that he was incompetent to defend himself. Id. at 1444 n. 3. The defendant then sought habeas corpus on the ground that he was improperly denied his constitutional right to represent himself under Faretta, and the ninth circuit agreed with him. See also United States v. Flewitt, 874 F.2d 669, 675-76 (9th Cir.1989) (a defendant's lack of competence in legal matters is not a proper basis for denying a request for self-representation).
In Faretta, after citing Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, *987 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court admitted "[i]t is surely true that the basic thesis of those decisions is that the help of a lawyer is essential to assure defendant a fair trial." Faretta, 422 U.S. at 832-33, 95 S.Ct. at 2540. The court went on, however, to conclude that because Faretta "was literate, competent, and understanding, and ... was voluntarily exercising his informed free will," he had wrongfully been deprived of his constitutional right to conduct his own defense. Faretta, 422 U.S. at 835, 95 S.Ct. at 2541.
According to 2 LaFave and Israel, Criminal Procedure § 11.5(d) (1984):

Faretta suggested three possible grounds for denying a defendant's request to proceed pro se. First, Faretta stressed that the request in that case was made "well before the date of trial." This suggested that, at some point, a request might be so disruptive of the orderly schedule of proceedings as to justify rejection on that ground alone.... Second, Faretta noted that "the trial judge may terminate self-representation by a defendant who engages in serious and obstructionist misconduct." Ordinarily, this authority would be exercised only after the defendant has begun to represent himself. However, in exceptional situations, the defendant's behavior in the course of seeking to obtain self-representation may in itself be disruptive and thereby justify denying his pro se motion.
Finally, by requiring a valid waiver of counsel as a prerequisite for self-representation, Faretta recognized the authority of a trial court to refuse to permit self-representation when, despite its efforts to explain the consequences of waiver, defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver. Faretta also makes clear, however, that a defendant does not need legal expertise nor unusual intelligence to meet its standard of awareness of the dangers and disadvantages of self-representation. Indeed lower courts have read Faretta as indicating that, with a proper explanation by the trial judge, a defendant "who is sui juris and mentally competent" should almost always be able to make a knowing and intelligent waiver.
We are not suggesting that trial courts should not inquire about the fairness of a trial without counsel when conducting a Faretta hearing, because the inquiry serves the salutary purpose of attempting to make the defendant "aware of the disadvantage under which he is placing himself by waiving counsel." Keene v. State, 420 So.2d 908, 910 (Fla. 1st DCA 1982). Denying defendants the right to represent themselves because their lack of legal knowledge will preclude them from getting the type of fair trial contemplated by the right to counsel cases, however, risks violating Faretta.
Nor are we suggesting that a court cannot deny self-representation on the ground that the defendant will not get a fair trial if the reason is something other than lack of legal knowledge. Indeed, in Kleinfeld v. State, 568 So.2d 937 (Fla. 4th DCA 1990), rev. denied, 581 So.2d 167 (Fla.1991), we cited Robinson, Ausby and Keene and stated that there should be an inquiry to determine if self-representation would deprive the defendant of a fair trial. In Kleinfeld the trial court had initially ruled, after conducting a Faretta hearing, that the defendant could represent himself, but subsequently denied self-representation, apparently because of the 72 year old defendant's poor physical health. We reversed because the trial court failed to conduct a hearing when it denied self-representation, but cautioned:
This opinion should not be construed to hold that the state of a defendant's health may or may not constitute one of the unusual circumstances that may deprive a defendant of a fair trial by allowing him to represent himself. What we are holding is that before a defendant's health can be determined to be such an unusual circumstance, an evidentiary hearing must be held.
Kleinfeld at 939.
We affirm appellant's convictions for sexual battery and indecent assault, but reverse his contempt conviction, because there *988 is no written judgment reciting the facts on which the contempt was based. We remand the contempt for entry of a written judgment complying with rule 3.830, Florida Rules of Criminal Procedure.
Affirmed in part and reversed in part.
GLICKSTEIN and WARNER, JJ., concur.
NOTES
[1] In Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), this court established a procedure for trial courts to follow when a defendant wishes to discharge court-appointed counsel because of incompetency of counsel, and that procedure was adopted by our supreme court in Hardwick v. State, 521 So.2d 1071 (Fla.1988).
[2] Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (cited in Faretta on right to counsel). Defendant had read Faretta.