671 So.2d 240 (1996)
Reginald Donald GAINER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-68.
District Court of Appeal of Florida, First District.
April 9, 1996.
*241 Nancy A. Daniels, Public Defender; Fred Parker Bingham II, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Patrick Martin, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, Judge.
Reginald Donald Gainer appeals convictions for sale and possession of cocaine in Case No. 94-1315. He also appeals the sentences imposed in that case, as well as sentences imposed for four prior offenses for which he had been on probation when the two new offenses took place. We affirm the convictions, but find merit in some of appellant's points with respect to his sentences. We affirm the sentence for the sale of cocaine, but vacate appellant's other sentences and remand for resentencing.

Convictions Stand
While defense counsel exercised peremptory challenges to prospective jurors at a sidebar conference, Mr. Gainer sat at counsel table, in the courtroom but out of earshot. He urges reversal of his convictions on grounds of noncompliance with Florida Rule of Criminal Procedure 3.180(a)(4), as construed in Coney v. State, 653 So.2d 1009 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 315, 133 L.Ed.2d 218. The Coney court held that a "defendant has a right to be physically present at the immediate site where pretrial juror challenges are exercised," 653 So.2d at 1013, but decided that this construction of the rule should be given prospective application only. The present case had been tried and was pending on appeal at the time Coney was decided. We recently held that the
express limitation of Coney to prospective application precludes the application of Coney to cases pending on direct appeal or not yet final at the time of the issuance of the Coney opinion.
Lett v. State, 668 So.2d 1094, 1095 (Fla. 1st DCA 1996) (on rehearing). We also certified in Lett as a question of great public importance the following: "DOES THE DECISION IN CONEY APPLY TO "PIPELINE CASES," THAT IS, THOSE OF SIMILARLY SITUATED DEFENDANTS WHOSE CASES WERE PENDING ON DIRECT REVIEW OR NOT YET FINAL DURING THE TIME CONEY WAS UNDER CONSIDERATION BUT PRIOR TO THE ISSUANCE OF THE OPINION?" Id. On the basis of stare decisis, we reject appellant's contention, but certify the same question here.
Alternatively, appellant seeks reversal of his convictions on the ground that the trial court responded erroneously when he complained about defense counsel's efforts on his behalf. Feelings of dissatisfaction were apparently mutual: Appointed defense counsel also sought leave to withdraw from representing appellant. At a pretrial hearing on the motion to withdraw, appellant announced that he had not received deposition transcripts or a report the Florida Department of Law Enforcement had supposedly prepared, and that he had been unable to supply the names of potential witnesses to defense counsel. In response, defense counsel assured the court that he had furnished appellant copies of all written discovery in his possession and reported that depositions, while scheduled, had not yet taken place. The trial *242 court denied the motion for leave to withdraw, advising appellant to provide defense counsel "with the names of any witnesses that you feel are appropriate."
On the day of trial, appellant again complained that he had not received deposition transcripts, but he made no further complaint about trial preparation or counsel's representation. The trial court remarked that discovery depositions in criminal cases are not ordinarily transcribed in the Fourteenth Circuit. After defense counsel advised the court that he had given appellant written summaries of deposed witnesses' testimony, the trial court ruled that ineffective assistance had not been demonstrated. Although appellant stated that he did not desire to represent himself,[1] the trial court informed him that, while he did not have the right to appointed counsel of his choice, self-representation was an available alternative.
In Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154, our supreme court approved the procedure laid down in Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). In Nelson, the court said:
[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
274 So.2d at 258-59. Mindful that a "Nelson inquiry" can only be "as specific and meaningful as the defendant's complaint" of ineffective assistance, Lowe v. State, 650 So.2d 969, 975 (Fla.1994), cert. denied, ___ U.S. ___, 116 S.Ct. 230, 133 L.Ed.2d 159, we find no error. Here, as in Hardwick:
The trial court made a proper inquiry, allowed the defendant to state his reasons for asserting his claims, and specifically found that defense counsel was competent as to those reasons. Since nothing in the record otherwise establishes defense counsel's incompetence as alleged by ... [here Mr. Gainer], we therefore may not disturb the trial court's finding.
521 So.2d at 1075. The able trial judge made conscientious inquiry into appellant's complaints, and duly determined that the allegations of ineffective assistance of counsel were unfounded.

Sentencing for New Offenses
The trial court sentenced appellant as a habitual felony offender for possession of a controlled substance (cocaine, as defined in section 893.03, Florida Statutes (1993)) in violation of section 893.13, Florida Statutes (1993), the offense alleged in count II of the information filed in Case No. 94-1315. The habitual offender statute does not, however, authorize enhanced sentences where "the felony for which the defendant is to be sentenced... is not a violation of s. 893.13 relating [solely] to the purchase or the possession of a controlled substance." *243 § 775.084(1)(a)3., Fla.Stat. (1993); Reeves v. State, 659 So.2d 1259 (Fla. 4th DCA 1995). While appellant's concurrent sentence as a habitual felony offender for sale of cocaine (count I) was lawful, we reverse and remand for sentencing under the guidelines as to the conviction for possession of cocaine (count II).

Sentencing For Old Offenses
In Case No. 88-1029, Mr. Gainer was convicted of selling cocaine on May 21, 1988, and sentenced on July 28, 1989, to thirty months in the custody of the Department of Corrections to be followed by twelve years' probation. He violated the terms of his probation in Case No. 88-1029 by committing new offenses of which he was convicted on May 6, 1991, in Cases Nos. 90-713, 90-2878, and 90-2916. On May 6, 1991, he was sentenced to seven years in the custody of the Department of Corrections, to be followed by three years' probation in all four cases (as well as others not pertinent here), with credit for time already served in Case No. 88-1029.
On direct appeal, this court concluded that "the scoresheet prepared for sentencing [on May 6, 1991] was improperly calculated." Gainer v. State, 590 So.2d 1001, 1002 (Fla. 1st DCA 1991). Because the pleas entered on May 6, 1991, were part of a plea agreement, however, the court affirmed. But the court noted "an additional issue as to the voluntariness of Gainer's plea[s]," id., and recognized that collateral relief might be appropriate. On December 20, 1991, the trial court granted such relief, and Mr. Gainer withdrew the pleas entered on May 6, 1991. He then entered new pleas to the informations in Cases Nos. 90-713, 90-2878, and 90-2916 and to the affidavit of probation violation in Case No. 88-1029, under a modified plea agreement, which resulted in four concurrent sentences of five and a half years in the custody of the Department of Corrections, to be followed by three years' probation. Appellant was serving these probationary terms at the time of the new offenses.

Guidelines Violated on Resentencing
Appellant's convictions in Case No. 94-1315 were grounds for revocation of probation in Cases Nos. 88-1029, 90-713, 90-2878 and 90-2916. On December 12, 1994, in each of the four older cases, the trial court imposed sentences of nine years in the custody of the Department of Corrections, allowing credit for time previously served.[2] (Although concurrent with each other, the four sentences were to be served before the habitual offender sentences pronounced in Case No. 94-1315.) The four nine-year sentences were all necessarily subject to the guidelines in force at the time the various offenses took place. Hamilton v. State, 548 So.2d 234 (Fla.1989); Dewberry v. State, 546 So.2d 409 (Fla.1989); Franklin v. State, 545 So.2d 851 (Fla.1989); Lambert v. State, 545 So.2d 838 (Fla.1989). "Sentences imposed after revocation of probation or community control must be in accordance with the guidelines." Fla. R.Crim.P. 3.701(d)(14).
The scoresheet prepared on May 6, 1991, "reflected a total point score of 171.... [which] included 42 points for legal constraint, calculated by multiplying the 14 base points by three, the number of Gainer's new offenses," Gainer, 590 So.2d at 1002, instead of by multiplying by one, as contemplated by the rule, see Flowers v. State, 586 So.2d 1058 (Fla.1991), which "would have resulted in a total of 143 points." Gainer, 590 So.2d at 1002. As (at least partially) corrected, the scoresheet originally used on May 6, 1991, served as the basis for sentencing on December 20, 1991. (R. 294.) Completed properly, the scoresheet indicates that cell four in category 7 ("Drugs") contained the appropriate guidelines for use on December 20, 1991. Fla.R.Crim.P. 3.988(g).
The concurrent nine-year sentences imposed after revocation of probation in Cases Nos. 90-713, 90-2878 and 90-2916 exceed the permitted maximum of seven years which a "single-cell bump-up" in those cases would allow. "The sentence imposed after revocation of probation or community control may be included within the original cell (guidelines *244 range) or may be increased to the next higher cell (guidelines range) without requiring a reason for departure." Fla.R.Crim.P. 3.701(d)(14). No reasons for departure were reduced to writing here. Cell five, "the next higher cell," specifies a recommended range of 4.5 to 5.5 years and a permitted range of 3.5 to 7 years. Fla.R.Crim.P. 3.988(g).
Revocation in the wake of the convictions in Case No. 94-1315 was the first and only revocation of probation in Cases Nos. 90-713, 90-2878, and 90-2916. On the other hand, revocation in the wake of the convictions in Case No. 94-1315 was the second revocation of probation in Case No. 88-1029, authorizing a "two-cell bump up" in that case, viewed separately.[3] Because the offense that gave rise to the conviction in Case No. 88-1029 took place before October 1, 1988, however, any sentence in excess of the recommended range in cell six was a departure sentence. Snyder v. State, 615 So.2d 231 (Fla. 1st DCA 1993). Cell six specifies a recommended range of 5.5 to 7 years. Fla.R.Crim.P. 3.988(g). The sentences imposed in all four cases must, therefore, be vacated as exceeding the guidelines by two years.
At this juncture, it is unnecessary to reach appellant's contention that the trial court erred in ordering that the habitual offender sentence for sale of cocaine be served only after service of the guidelines sentences. While conceding that guidelines sentences and habitual offender sentences need not be concurrent, appellant maintains that habitual offender sentences must be served prior to guidelines sentences where both are imposed simultaneously. Relying on Silvestrini v. State, 633 So.2d 1143 (Fla. 2d DCA 1994) and Ricardo v. State, 608 So.2d 93 (Fla. 2d DCA 1992), he argues that being required to serve a habitual offender sentence after a guidelines sentence instead of before has the effect of denying or delaying a control release date. Depending on what happens on resentencing, however, the question may never require decision in this case.
Appellant's convictions and his habitual offender sentence for sale of cocaine are affirmed. All other sentences are vacated, and the case is remanded for resentencing.
BOOTH and WOLF, JJ., concur.
NOTES
[1] In Hardwick v. State, 521 So.2d 1071, 1074 (Fla.1988), the supreme court noted that even "vacillation on the question of self-representation has been held a sufficient grounds for denying the request." See generally Smith v. State, 641 So.2d 1319 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1129, 130 L.Ed.2d 1091; Valdes v. State, 626 So.2d 1316, 1320 (Fla.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2725, 129 L.Ed.2d 849; Hardwick; Lewis v. State, 623 So.2d 1205 (Fla. 4th DCA 1993). When a defendant has unambiguously rejected the possibility of self-representation, the trial court has no duty to recite a list of the specific hazards the defendant's decision to be represented by counsel has obviated.
[2] In Case No. 88-1029, appellant also received credit for accrued gain-time because that offense took place before October 1, 1988. See Bradley v. State, 631 So.2d 1096 (Fla. 1994); State v. Green, 547 So.2d 925 (Fla.1989).
[3] We reject appellant's assertion that there has been only one revocation of probation in Case No. 88-1029. While the first plea to the initial affidavit of probation violation was withdrawn on December 20, 1991, the underlying judgment of conviction was never disturbed; and a second plea to the initial affidavit of probation violation was entered on December 20, 1991, under the modified plea agreement.