NORTHCUTT, Judge.
Just before he was tried on criminal charges, Charles Jones unequivocally informed the court that he did not want to be represented by his appointed attorney. The court denied Jones’s request to discharge his counsel without inquiring into his reasons. This was a structural defect in Jones’s trial, and we must reverse his convictions and remand for a new trial.
Jones was charged with fleeing at high speed to elude, a second-degree felony in violation of section 316.1935(3)(a), Florida Statutes (2007), and obstruction without violence, a misdemeanor in violation of section 843.02, Florida Statutes (2007). On the morning of his trial, prior to voir dire, Jones told the court: “I’m ready to fire my attorney. I don’t want him to represent me.... I don’t want this guy right here to represent me.” The court responded with assurances that Jones’s appointed counsel was “a fíne attorney” and had “done everything possible that he can to represent your interest, so he’s going to represent you.” Jones reiterated: “I don’t want [defense counsel] to represent me.” The court ignored the request, and instead, it announced that the case was to be tried “right now” and directed the bailiff to bring in the venire for jury selection.
After the prospective jurors were questioned but before the jury was selected, Jones’s attorney informed the court that Jones wanted to discharge him and obtain another lawyer. On the court’s inquiry, someone in the gallery mentioned the name of a private defense attorney. Jones then addressed the court directly, stating that he did not want to be represented by the Public Defender’s Office. But the mentioned attorney was not present. Without further inquiry, the court denied Jones’s request to dismiss his appointed attorney. The jury was then selected, sworn, and released for the day.
Trial resumed the following day before a different judge. The previously named defense attorney was in attendance, and he asked to represent Jones. He also sought a continuance in which to prepare. But, as the jury had already been sworn, the prosecutor expressed concern about the risk of double jeopardy. The court denied the *151 motion for continuance, finding that it was “interposed solely for the purpose of delay.” However, recognizing the defendant’s right to counsel of his choosing, the court granted a brief recess to permit the private attorney to decide whether he wanted to immediately take over the defense.
After the recess, Jones was not to be found. His appointed counsel advised that he could not locate Jones. He also informed the court that, just that morning, Jones’s family had expressed concerns about Jones’s competency and had pointed out his bizarre behavior.[1] No evidence was taken on this point, and the trial proceeded in Jones’s absence with appointed counsel representing him. Jones was convicted as charged and sentenced, as a habitual offender, to twenty years in prison for fleeing and to time served for obstruction.
Jones’s case implicates important rights constitutionally guaranteed to all criminal defendants. The Sixth Amendment to the United States Constitution contains an explicit right to the assistance of counsel for the defense in a criminal prosecution.[2] Criminal defendants do not have the right to appointed counsel of their choice. Hardwick v. State, 521 So.2d 1071, 1074 (Fla.1988).[3] But “ ‘the right to counsel is the right to the effective assistance of counsel.’ ” Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). The Supreme Court has also recognized that the Sixth Amendment contains an implicit right to self-representation. Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (“The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.”).[4] Sixth Amendment rights “are part of the ‘due process of law[1] that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States.” Id. at 818, 95 S.Ct. 2525 (footnote omitted).
The Florida Supreme Court has recognized that the right to counsel might be impaired by the incompetence of a court-appointed attorney. Hardwick, 521 So.2d at 1074. To minimize this possibility, the court adopted a procedure, first developed in Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), for inquiring into a defendant’s request to dismiss an appointed attorney. Hardwick, 521 So.2d at 1074-75. The issue may arise when a defendant complains about his appointed attorney, or it may come up when a defendant asks to dismiss his appointed counsel, as occurred here. In either case, the court must conduct a preliminary inquiry into the reasons for the defendant’s dissatisfaction. Nash v. State, 53 So.3d 1208, 1211 (Fla. 2d DCA 2011) (citing Nelson); see also Maxwell v. State, 892 So.2d 1100, 1102 (Fla. 2d DCA 2004) (“The first step in the procedure is the preliminary Nelson inqui *152 ry in which the court ascertains whether the defendant unequivocally requests court-appointed counsel’s discharge and the court asks the reason for the request.”). If the defendant claims that the attorney is not rendering effective assistance, the court should inquire of both the defendant and the attorney and then make a finding on the record whether the defendant has a reasonable basis for the claim. Nash, 53 So.3d at 1211. If the defendant’s complaint lacks substance, a full inquiry is not warranted. Penn v. State, 51 So.3d 622, 623 (Fla. 2d DCA 2011) (“[General allegations of dissatisfaction by a defendant are not enough to trigger the need for a full Nelson hearing.”).
Thus, depending on the defendant’s answers to the court’s questions, further inquiry may or may not be required. If, after the court’s initial inquiry or upon further questioning, the court determines that the defendant’s complaints have no merit, the court must ascertain whether the defendant persists in his desire to dismiss appointed counsel. And if so, the court must then inform the defendant that he can discharge the appointed attorney but that a substitute will not be appointed and the defendant would be exercising the right to self-representation. Maxwell, 892 So.2d at 1102; Jones v. State, 658 So.2d 122, 125 (Fla. 2d DCA 1995). When a defendant, so advised, continues with the request to discharge appointed counsel, the court must inquire and determine whether the defendant is making a knowing, intelligent, and voluntary waiver of the constitutional right to the assistance of counsel. Jones, 658 So.2d at 125 (citing Faretta).
In this case, the court simply never asked why Jones wished to dismiss his attorney. We appreciate that such a request might try judicial patience when, as here, it is made on the morning of trial while citizens called for jury duty are waiting to be questioned. See Jones, 658 So.2d at 126 (recognizing the burden of Nelson and Faretta inquiries and the understandable frustration, but reversing where inadequate inquiries were made). A defendant may not invoke even these important constitutional rights in bad faith or to delay proceedings. See Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (noting trial judge’s authority to terminate self-representation when defendant “deliberately engages in serious and obstructionist misconduct”); Foster v. State, 704 So.2d 169 (Fla. 4th DCA 1997) (explaining that Sixth Amendment rights cannot be used in bad faith or to delay or subvert proceedings).
That being said, in this case the court should have made a preliminary inquiry when Jones repeatedly expressed his wish to discharge his appointed attorney before the start of jury selection. In the absence of such an inquiry, the record contains no basis for assessing whether Jones had a reasonable claim that appointed counsel was not rendering effective assistance. In the absence of an inquiry, the record contains no indication of whether Jones would have exercised his constitutional right to self-representation rather than proceeding to trial with appointed counsel who was not acceptable to him. Of course, we know that Jones was absent from his trial; we do not know whether his absence was voluntary, whether it was caused by the mental health issues suggested by his family, or even whether it resulted from the trial court’s unwillingness to dismiss the appointed attorney that Jones found objectionable. See Faretta, 422 U.S. at 834, 95 S.Ct. 2525 (“To force a lawyer on a defendant can only lead him to believe that the law contrives against him.”); see also Jones, 658 So.2d at 124 n. 1 (noting that “[ajppellant, obviously upset *153 at the trial court’s rulings, voluntarily absented himself’ from portions of the trial).
We find no fault in the trial court’s denial of a continuance, given the court’s finding and the fact that the jury had been sworn. But the later events do not cure the earlier failure to inquire into Jones’s reason for seeking to dismiss his appointed counsel. “The preliminary inquiry is the crucial step in the procedure that determines what other procedures, if any, a court must follow in order to adequately protect a defendant’s constitutional rights.” Maxwell, 892 So.2d at 1102. This was a structural error in the trial and requires that we reverse. See id. at 1103; Nash, 53 So.3d at 1211 (Altenbernd, J., concurring).
Reversed and remanded for new trial.
MORRIS, J., Concurs.
ALTENBERND, J., Concurs with opinion.

. According to a supplemental record filed in this case, Jones was apprehended within a few months after trial and was found incompetent to proceed in another case.

. This right is also expressly guaranteed by article I, section 16(a), of the Florida Constitution.

. To the extent that Hardwick suggested the right to self-representation was conditioned on the defendant's legal abilities, the supreme court eliminated this concern in State v. Bowen, 698 So.2d 248 (Fla.1997), and it amended Florida Rule of Criminal Procedure 3.111(d)(3) to remove any assessment of a defendant’s legal skills. See McKenzie v. State, 29 So.3d 272, 281 (Fla.2010).

.This right is explicit in article I, section 16(a), of the Florida Constitution.