CIKLIN, J.
Kenneth Hall challenges his conviction and sentence for first-degree murder and armed robbery. We affirm on all points and choose to address the merits with respect to two of his arguments on appeal. First, he argues that the trial court committed reversible error by failing to conduct a preliminary Nelson[1] inquiry after he filed a pro se written motion to dismiss his appointed counsel. Second, he argues that the trial court erred in denying his request to instruct the jury on manslaughter by culpable negligence. We find that the first issue was not preserved, and while we agree that the trial court erred in denying Hall’s request for a jury instruction on manslaughter by culpable negligence, we find the error to be harmless.
On July 5, 2005, Benjamin Jones was shot and killed. Hall was arrested two *225 days later when he tried to sell the victim’s cell phone to the victim’s girlfriend for $25. At the police station, after Hall waived his Miranda rights, Hall made several statements to the police. At first Hall denied having any involvement with the crime and claimed that he had purchased the victim’s cell phone from a “crack head” for $20 worth of drugs. The interrogating detective then informed Hall that he was under arrest for dealing in stolen property — a phone taken in a homicide. The detective also told Hall that his shoe prints matched the prints beside the body and that his fingerprints matched those found on a car at the scene.
Hall then admitted to being at the scene of the crime, but claimed that he was not the shooter, but only the lookout for “Danny Boy.” The detective told Hall that his story was not plausible and that the detective knew that Hall was guilty. He then told Hall that there was a “big difference” between an intentional killing and an accidental killing. Hall subsequently admitted to shooting Jones but claimed that he did not try to kill him. Hall had asked for money while his hand was on the trigger. He did not want to shoot, but had cocked the trigger back to let Jones know that he was serious. Hall further stated he had a chrome automatic and was by himself.
Hall was indicted for first-degree murder (premeditated and/or felony) and armed robbery. Hall was declared indigent, and in August 2005, the trial court appointed Evan Baron as Hall’s defense counsel. In September 2006, Hall filed a pro se “Motion to Dismiss Appointed Counsel” with the trial court. The motion was made on what appears to be a pre-printed form wherein Hall only filled in some blanks including his name, case number, the trial judge’s name, charges, his attorney’s name, and dates. The trial court never issued a ruling on this motion, and based on the record, the motion does not appear to have ever been scheduled for a hearing. Mr. Baron continued to represent Hall through trial and sentencing.
In April 2008, Hall filed a motion to suppress the statements that he made to the police immediately after his arrest. The trial court held a hearing on this motion in July 2008, and subsequently, issued an order denying Hall’s motion. Hall testified at the July hearing.
In June 2009, Hall’s case proceeded to trial. At the trial, the state introduced the video recording of Hall’s interrogation immediately after his arrest. Hall testified on his own behalf at the trial and claimed that he was not at the crime scene on the night in question and that he did not rob or shoot the victim. He testified that his admissions during the police interrogation were made because he was under a lot of pressure and his life was not going right.
The jury found Hall guilty as charged on both counts. The jury also specifically found that “during the course of the” robbery, Hall “actually infliet[ed] death to Benjamin Jones as a result of discharging a firearm in his actual possession.” Hall was sentenced to life in prison for the first-degree murder charge, and a concurrent twenty-five years for the armed robbery.
Hall first argues that the trial court committed reversible error by failing to conduct a preliminary Nelson inquiry. We do not decide this issue, however, because it was not preserved. Hall filed, pro se, a preprinted form motion to dismiss his court-appointed counsel, but Hall never obtained a ruling on that motion. “Absent fundamental error, an appeal may not be taken from a trial court’s judgment or order unless properly preserved. See § 924.051(3), Fla. Stat. (2006). To be preserved, the issue or legal argument must be raised and ruled on by the trial court.” *226 Rhodes v. State, 986 So.2d 501, 513 (Fla.2008); see also LeRetilley v. Harris, 354 So.2d 1213, 1214 (Fla. 4th DCA 1978) (observing that “failure to secure a ruling on an objection waives it, unless the court deliberately and patently refuses to so rule”).
In Sheffield v. State, 769 So.2d 493 (Fla. 4th DCA 2000), we held that the appellant had failed to preserve the trial court’s purported error in failing to conduct a Nelson inquiry. We noted that the appellant “never called the motion to the court’s attention,” “never asked for a hearing on the motion,” and “proceeded to trial with the same public defender, without voicing any objection to the trial court.” Id. Likewise, here, Hall never called the motion to the trial court’s attention, never asked for a hearing on the motion, and proceeded to trial with the same court-appointed counsel without voicing any objection.
Furthermore, the record clearly indicates that Hall had ample opportunity to do so. Hall’s motion was filed nearly three years before his trial commenced. The record shows that subsequent to filing that motion, appointed counsel filed numerous discovery motions, conducted multiple depositions, and filed a motion to suppress statements. The record also includes transcripts from a hearing on that motion to suppress. Hall’s court-appointed counsel and Hall were both present at that hearing. Hall even testified at the motion to suppress hearing, yet Hall never raised any concerns about his appointed counsel at that hearing. The record also includes the trial transcripts and transcripts from Hall’s sentencing hearing. Again, Hall never raised any concern regarding his appointed counsel in either of those transcripts.
In fact, after the jury was selected but before the jury was sworn in, the trial court directly asked Hall if he had any concerns regarding the process and advised Hall to immediately inform the court if Hall had any issues with his trial counsel. The trial court concluded by asking Hall if he had any questions or concerns. Hall responded, “No.” Thus, there is no indication that Hall took any steps to bring his motion to the trial court’s attention.[2] As such, Hall failed to preserve this issue for appellate review.
Hall next argues that the trial court erred by refusing to instruct the jurors on manslaughter by culpable negligence. We agree that the trial court erred, but find the error to be harmless.
The crime of manslaughter can be committed in one of three ways: by act, by procurement, or by culpable negligence. See § 782.07(1), Fla. Stat. (2005). The standard instruction for manslaughter requires the trial court to tailor the instruction “depending upon allegations and proof.” Fla. Std. Jury Instr. (Crim.) 7.7. The manslaughter instruction, however, must “be sufficiently complete and accurate so that it does not mislead the jury and negate the defendant’s theory of defense.” Bolin v. State, 8 So.3d 428, 431 (Fla. 2d DCA 2009) (citation and quotations marks omitted). As such, “[ujnless the evidence in the record unmistakably supports only the ... theory that the defendant’s act was voluntary, the trial court is obligated to instruct the jury on, and define, culpable negligence.” Harris v. *227 State, 570 So.2d 397, 399 (Fla. 3d DCA 1990).
At the charge conference, defense counsel requested that the trial court instruct the jury on manslaughter by culpable negligence, but the trial court denied this request. The court gave two reasons for refusing to give the requested instruction: 1) the only indication that the shooting was accidental came from the detective’s suggestions to Hall during the interrogation, and the detective’s statements did not constitute evidence; and 2) Hall had “totally repudiated” the theory of an accidental shooting by taking the stand at trial and testifying that he was not present at the crime scene and had not shot the victim. The trial court’s ruling was erroneous.
First, the state introduced Hall’s statements into evidence in which Hall claimed that he shot the victim accidentally. At first Hall told the interrogating detective that someone else was the shooter, but after some persuasive questioning, Hall admitted that he shot the victim. Hall then told the detective:
I didn’t try to kill him, man, all I did was cock it back, man, I was like, give me your money, man. My hand was still on the trigger, I didn’t try to kill him though, I promise to God. I did not intentionally, I didn’t even want to shoot the gun. I just cocked it back because, just to let him know that I wasn’t playing.
Additionally, the state introduced statements that Hall made to a friend of his at the police station immediately after confessing to the police. Hall again stated that the shooting was not intentional.
Hall’s statements, which were offered against him by the state, constituted admissible hearsay evidence pursuant to section 90.803(18), Florida Statutes. Thus, the evidence on record does not “unmistakably support! ] only the ... theory that the defendant’s act was voluntary.” See Harris, 570 So.2d at 399.
In refusing to give the culpable negligence instruction, the trial court also reasoned that Hall had repudiated the statements he made to the police regarding an accidental shooting by taking the stand and claiming he did not rob or shoot the victim. The trial court’s reasoning was flawed, however, because to reach its conclusion, the trial court invaded the province of the jury. It was the jury’s responsibility to resolve the conflicting evidence between Hall’s statements to police and Hall’s trial testimony. See Longval v. State, 914 So.2d 1098, 1100 (Fla. 4th DCA 2005) (“In determining whether to give a requested instruction, the trial court should consider the evidence presented without weighing it, as the latter is a task for the jury.”).
Although the trial court erred in refusing to give the culpable negligence instruction, the error was harmless. See Pena v. State, 901 So.2d 781, 787 (Fla.2005) (“[I]f the trial court errs in failing to give a proper instruction on a lesser offense, and the lesser offense is more than two steps removed from the offense for which the defendant is convicted, then the error is subject to a harmless error analysis.”). The error was rendered harmless by the jury finding Hall guilty of armed robbery. Based on that verdict, all the state had to prove to convict Hall of first-degree murder was that Hall killed the victim during the commission of that robbery. In other words, Hall would be guilty of first-degree felony murder for shooting the victim during the commission of that robbery even if the shooting was entirely accidental. Because the trial court’s error was harmless, we affirm Hall’s conviction and sentence for first-degree murder.
*228 We have considered Hall’s remaining point on appeal and reject it without further discussion.

Affirmed.

GROSS and LEVINE, JJ„ concur.

. Nelson v. State, 21A So.2d 256 (Fla. 4th DCA 1973) (establishing procedure for handling complaint that appointed counsel is incompetent), adopted by Hardwick v. State, 521 So.2d 1071 (Fla.1988).

. Ordinarily, we would expect defense counsel to ensure that a defendant's motion to discharge counsel is ruled upon by the trial court. In this case, however, there is no indication in the record that Hall’s counsel was ever served with or made aware of Hall’s motion. Hall’s unverified motion does not indicate that a copy of the motion was sent to his appointed counsel.