460 So.2d 489 (1984)
Kevin Michael John MILLETT, Appellant,
v.
STATE of Florida, Appellee.
No. AX-377.
District Court of Appeal of Florida, First District.
December 10, 1984.
*490 Michael E. Allen, Public Defender, Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., John Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
ERVIN, Chief Judge.
Appellant Millett appeals from his conviction and sentence of four years for child abuse, urging that the trial court erred for the following reasons: (1) in denying appellant's right to a fair trial by commenting to the jury on his credibility as a witness; (2) in failing to apprise appellant that in exchange for a guideline sentence he had relinquished his protection against ex post facto laws; and (3) in deviating from the recommended guideline sentence without stating in writing clear and convincing reasons justifying the deviation. We affirm as to the first two issues raised and reverse the last.
At the time of the offense, appellant was living with his girlfriend, then separated from her husband, and the girlfriend's 17-month old daughter, the victim. The morning of September 6, 1982, the mother left appellant and her daughter at her house, for the purpose of seeking a job. Appellant testified at trial that while the mother was gone, the infant began spitting up bananas, and after unsuccessfully telling the infant to stop, he "smacked" the child off the cushions and onto a dresser. The infant suffered a near mortal head injury and possible permanent physical injuries following the incident.
During cross-examination of appellant, the state sought to pinpoint the time of the offense. The following then transpired:
Q. She had a bottle, and she had a banana.
A. Earlier, she had had a bottle, and we had just got done eating lunch. I can't remember what we had for lunch.
Q. What time of the morning was it?
A. What time that we are (sic) or 
Q. What time of the morning was it when she was eating the bananas or eating the piece of banana?
A. I guess 12:00 o'clock. I'm not really sure about the time.
Q. What time of the morning was it when you had breakfast?
A. About 10:30 or 11:00 o'clock.
Q. All right, sir. You gave her a piece of banana, and what else did you give her for lunch?
A. I can't remember what we had  We had just eaten breakfast.
Q. Now, you are confusing, which is it, had you just eaten lunch 
MR. TERRELL: Objection, it's argumentative.
THE COURT: Well, I think the witness has given double statements. So, ask him again to clarify it.

(e.s.) Shortly thereafter, counsel for the state sought to clarify the location of the parties prior to the offense. The following then occurred:
Q. All right. And I take it she was in her room at the time?
A. Right.
Q. And where were you at the time?
A. In the bedroom.
Q. You were in your bedroom or her bedroom?
A. In her bedroom. I went in there. She has a tendency 
MR. TERRELL: Objection to the question. It is unclear as to what time he's talking about.
THE COURT: Well, I don't think it's from anything the prosecutor is doing. I think it's the response of the witness, and I don't know how you cure that. That's your client.

MR. TERRELL: I request the prosecutor ask and specify where he's referring to.

*491 THE COURT: I think he has. He's trying to get him to specify. It's Cross Examination, and I'm overruling your objection.
(e.s.) Thereafter, counsel for the state sought to pinpoint the severity and the intent with which appellant had struck the child by asking appellant to demonstrate the striking. The following then transpired:
Q. All right. You indicated that you got upset, and you smacked her, and you were aggravated. And on your Direct testimony you said, "I guess I smacked harder than that." Demonstrate to the Jury just how hard you struck her?
A. I don't even remember how hard I did hit her. I just struck out.
Q. Go ahead. You just struck out in anger?
A. Struck out, but not to do  to do any kind of harm like this to her 
Q. That's not my question.
MR. TERRELL: I object. Let the witness answer the question.
THE COURT: He was not answering the question. He was interjecting an unresponsive answer.

(e.s.) On re-cross, the judge sustained as argumentative a defense objection to a prosecution question which implied that appellant was unconcerned by what he had done to the victim. Thereafter, appellant testified that he had been in the victim's bedroom a "couple of minutes" before striking her and the following exchange ensued:
A. A couple of minutes.
Q. And you gave her two minutes to stop spitting out the banana before you smacked her up against the dresser drawers?
A. I was picking up 
Q. That you gave her two minutes 
MR. TERRELL: Let the witness answer the question.
MR. WILLIAMS: Your Honor, he was unresponsive.
MR. TERRELL: He was trying to tell us what he was doing during the time 
THE COURT: That's right, that was not responsive to the question, still, Mr. Terrell.

(e.s.)
Following a lunch recess, the defense moved for a mistrial on the ground that the judge, during the four above quoted exchanges, had "commented" upon appellant's "credibility" before the jury. Appellant did not move for a curative instruction. Appellant's counsel stated:
With all due respect to the Court, I need to make an objection. Move for a mistrial as to the Court's comments during my client's testimony relating  on the weight of that  believability of that evidence.
THE COURT: What comments are we talking about?
MR. TERRELL: The Court's comments relating to his responsiveness to the prosecutor's questions, and 
THE COURT: I think the Court has the perfect right to delineate in the record the nature of the problem, and the Court commented only on what your client was doing, that he was not being responsive to the question, and that does not give you grounds for a mistrial. That's what Courts are for.
MR. TERRELL: Your Honor, I have noted my objection. I was, in fact, myself confused by the questions being asked.
THE COURT: I can't help it if you are confused. That doesn't mean I have to be confused with you. We don't run in the same track. I can't help that.
Appellant argues that the trial judge violated Section 90.106, Florida Statutes, providing: "A judge may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused." In Ehrhardt, Florida Evidence § 106.1, p. 22, it is stated:
During a jury trial, the judge occupies a dominant position. Any remarks and comments that the judge makes are listened to closely by the jury and are given *492 great weight. Because of the credibility that the comments are given and because they would likely overshadow the testimony of the witnesses themselves and of counsel, Section 90.106 recognizes that a judge is prohibited from commenting on the weight of the evidence, or the credibility of the witness, and from summing up the evidence to the jury. If such comment and summing up were permitted, impartiality of the trial would be destroyed.
(footnotes omitted)
During cross-examination of appellant, the judge's comments "could have been interpreted by a jury as a comment on appellant's veracity and therefore influenced their deliberations." Gordon v. State, 449 So.2d 1302, 1304 (Fla. 4th DCA 1984). We agree that the trial judge, during the four aforementioned exchanges, "commented" on appellant's credibility before the jury. The only remaining question is whether the motion for mistrial should have been granted.
Appellee relying on Ferguson v. State, 417 So.2d 639 (Fla. 1982), responds that an appellant who fails to accompany his unsuccessful motion for a mistrial with a motion for a curative instruction is not entitled to a reversal of his conviction. Here, following a lunch recess, counsel first moved for a mistrial as to the court's comments earlier made during appellant's testimony. The judge overruled the objection and did not grant the mistrial. Appellant, however, never moved for a curative instruction. As the Florida Supreme Court has observed in Ferguson v. State, "[E]ven if the comment is objectionable on some obvious ground, the proper procedure is to request an instruction from the court that the jury disregard the remarks." Id. at 641 (e.s.). Appellee urges that appellant's failure to request such an instruction should prevent a reversal of his conviction.
Although the proper procedure normally would have been for appellant's counsel to move for a curative instruction, we do not regard his failure to do so, under the circumstances presented, as now barring his right to urge the point as error. The ordinary situation in which the rule requiring a motion for curative instructions occurs when the prosecutor  not the trial judge  makes the offending comments. In the case at bar the court on four occasions made statements in the presence of the jury relating to the responsiveness of defendant's answers, which may have caused the jury to question his credibility. Once the trial judge overruled appellant's objection to the "comments", and later the motion for mistrial, we consider that it would have been a futile gesture for counsel to request a curative instruction, because the trial judge clearly believed he had acted properly. The Third District Court of Appeal, referring to a prosecutor's improper comments, states that "the proper procedure to follow where improper remarks are made that are not by their very existence of such an inflammatory nature as to deny a fair trial is to object and to move for corrective instructions." (e.s.) Mabery v. State, 303 So.2d 369, 370 (Fla. 3d DCA 1974); see also Williams v. State, 443 So.2d 1053 (Fla. 1st DCA 1984). In our view, the very existence of the judge's comments were of such character that they might potentially have affected the defendant's right to a fair trial, so that the motion for a corrective instruction would simply have been superfluous. Appellant's objection was made "sufficiently specific to apprise the trial court of the potential error," and it was not incumbent upon him to move for a corrective instruction under such circumstances. Perdomo v. State, 439 So.2d 314, 315 (Fla. 3d DCA 1983).
It remains to be seen, however, whether the error, given the facts of the case, can be deemed harmless. In our view it was. The offense charged, i.e., aggravated child abuse in violation of Section 827.03, Florida Statutes, was clearly established by the evidence. Appellant never denied striking the child. Indeed, there was no other cause offered for the victim's near-fatal injuries. The attending physician testified that the nature of the injury sustained would have required force above *493 and beyond that which would have occurred accidentally by falling from a bed or chair, or while playing and striking the head on an object. A fall from eight or ten feet onto her head could have resulted in the injury. One means by which a violation of section 827.03 may occur is by the commission of an aggravated battery. Since an aggravated battery in turn is committed by one who "[i]ntentionally or knowingly causes great bodily harm," Section 784.045(1)(a), Florida Statutes, there was overwhelming proof of the crime's perpetration.
When faced with a situation in which harmless error may apply, our task is to determine whether "the error committed was so prejudicial as to vitiate the entire trial." Cobb v. State, 376 So.2d 230, 232 (Fla. 1979); accord State v. Murray, 443 So.2d 955, 956 (Fla. 1984). Indeed, in another context, the harmless error has been applied to excuse even judicial comments made in the presence of the jury. Provence v. State, 337 So.2d 783, 785-86 (Fla. 1976).
Although we apply the harmless error rule, given the overwhelming nature of the evidence presented against defendant, we must caution that another case with less evidentiary force may require reversal. As was observed in Hamilton v. State, 109 So.2d 422, 424-25 (Fla. 3d DCA 1959):
The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses and other court officers. Where such comment expresses or tends to express the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of an accused, it thereby destroys the impartiality of the trial to which the litigant or accused is entitled.
Regarding the asserted error as to appellant's relinquishing his protection against ex post facto laws on the ground that the record is silent as to whether he was advised, after selecting guideline sentencing, that he would not be eligible for consideration of parole, we respond that this case is controlled by Moore v. State, 455 So.2d 535 (Fla. 1st DCA 1984), holding that because the rule and legislation authorizing the guidelines require only a showing that a defendant "affirmatively select" guideline sentencing, there is no necessity for such selection to be equatable with the term "knowingly and intelligently." Moore, like the instant case, involved a defendant's request for guideline sentencing following trial by jury, and not as part of a plea bargain. We therefore affirm as to Point II.
We agree with appellant's position raised under Point III  that the guideline sentence imposed should be reversed because the trial court failed to state clearly and convincingly in writing its reasons for deviating from the recommended range. See Jackson v. State, 454 So.2d 691 (Fla. 1st DCA 1984); Roux v. State, 455 So.2d 495 (Fla. 1st DCA 1984).
AFFIRMED in part, REVERSED in part, and the sentence is VACATED and the case REMANDED for resentencing.
MILLS and ZEHMER, JJ., concur.