ORFINGER, Judge.
In our earlier decision in this case[1] we certified to the supreme court the question of whether harmless error would apply to a comment by the prosecutor on the defendant’s failure to testify. In Barry v. State, 494 So.2d 213 (Fla.1986), the supreme court held that such a comment was error, but whether or not it was reversible error would be decided on a harmless error analysis. It then remanded the case for reconsideration of the error in the light of its holding in State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
In DiGuilio, the court announced that it would apply the harmless error test espoused in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 705 (1967) to an impermissible comment on a defendant’s right to remain silent, in order to determine if the error was reversible.
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the test requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
DiGuilio, 491 So.2d at 1135.
In disapproving our earlier determination that the erroneous comment was harmless because “the evidence of guilt was overwhelming,” the court said that this analysis did not comply with DiGuilio, where it was said that
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful. This rather truncated summary is not comprehensive but it *526 does serve to warn of the more common errors which must be avoided.
DiGuilio, 491 So.2d at 1139.
Of necessity, to determine whether the error contributed to the conviction, we must examine the permissible evidence on which the jury could have legitimately relied as well as the impermissible comment which might have possibly influenced the jury verdict. DiGuilio did not set forth a standard against which a reviewing court determines whether the error might have affected the verdict. We conclude, however, that in approving Chapman, the court also approved the explanation of how the Chapman test would be applied which the Supreme Court enunciated in later cases.
In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the defendant was convicted of attempted robbery and murder after the trial court improperly admitted confessions of co-defendants. The Supreme Court held that the admission of the co-defendant’s confessions was harmless error. In doing so, the court elaborated on its earlier definition of the harmless error rule:
It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of [the codefendant’s] confessions and who otherwise would have remained in doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. We admonished in Chapman, 386 U.S., at 23, 87 S.Ct., at 827, against giving too much emphasis to “overwhelming evidence” of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions.
We do not depart from Chapman; nor do we dilute it by inference. We reaffirm it. We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton [v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476] can constitute harmless error, we must leave this state conviction undisturbed.
Harrington, 89 S.Ct. at 1728-29.
Three years later the Court again issued an opinion that illuminated its application of harmless error analysis. In Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the defendant appealed his state conviction, arguing that it should be reversed because admissions of his co-defendant deprived him of a fair trial. The Court found the error harmless and affirmed the defendant’s conviction. After discussing Harrington, the court stated that:
In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefend-ant’s admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.
[[Image here]]
[i]n this case, we conclude that the “minds of an average jury” would not have found the State’s case significantly less persuasive had the testimony as to [the co-defendant's] admissions been excluded.
Schneble, 92 S.Ct. at 1059, 1060.
In the present case, Barry was charged with second degree murder in the death of Melvin Geiger, Jr. The State’s evidence was the only evidence before the jury. The defense presented no testimony. Robert Sutphin testified that he was awakened in the early morning hours of September 8, 1983, by a thumping noise outside his apartment window. Sutphin looked out his window and saw Barry dragging the body of a young man towards the apartment garage. The young man appeared to be dead. Sutphin telephoned the *527 police. When the police arrived, they found the body of Melvin Geiger in the back of his pick-up truck which was parked in the garage. Geiger had died as a result of multiple stab wounds to the heart and lungs.
The police followed a trail of blood splatters from the truck to the third floor of the apartment building. The blood trail appeared to end at the top of the stairs on the third floor. From there, the police followed drag marks which lead to Barry’s apartment. Barry answered the door when the police knocked and agreed to accompany them to the station. Barry asked if he could get dressed. The police told him that he could and they followed him into the apartment. The police observed what appeared to be fresh blood on the floor near the front door and in the bathroom. At this point, however, Barry denied any knowledge of the events.[2]
At the station, Barry gave the police consent to search his apartment. Blood stains and splatters consistent with the victim’s blood type were found in the apartment. Barry gave a tape-recorded statement at 9:30 that morning and a second tape-recorded statement that evening[3] in which he admitted killing Geiger. Although there were some discrepancies in the statements, Barry essentially claimed in both that Geiger had attempted to force him to perform oral sex and that he had struck Geiger with a knife in self-defense and to prevent the commission of a sexual battery.
The medical examiner testified that he found fifteen stab wounds in the chest area of Geiger’s body and one wound in the back. Judith Bunker, a blood stain expert, testified that the point of origin of the blood stains on the bedroom wall was the vicinity of the bed. Bunker further testified that the absence of heavy saturation of blood on the mattress suggested that the victim was in a supine position when he received wounds to the chest.
During closing argument, defense counsel argued, based on the taped statements, that Barry had killed Geiger in self-defense. Counsel further contended that Barry had told the truth in both statements. During its closing argument, the State made the following remarks:
On his first statement, you’ll notice that the first statement, this is the first taped statement. The first statement absolutely denied everything. He didn’t do anything. He just went home and went to sleep and we have the first taped statement, the second taped statement. And they are inconsistent, in and of themselves. If he told the truth in the first statement, then he lied in the second statement. And he also lied in the very, very first statement. So, he didn’t tell the truth. He still hasn’t told the truth. [Emphasis added].
Defense counsel moved for a mistrial on the grounds that by the emphasized language the prosecutor had commented on Barry’s failure to testify. The motion was denied. The jury found Barry guilty of the lesser included offense of manslaughter.
We conclude that in this case the “minds of an average jury” would not have found the State’s case significantly less persuasive had the prosecutor not made the quoted statement. The State adduced evidence that Barry was seen dragging Geiger’s body to his truck, that a trail of blood went from the truck to Barry’s apartment and that blood matching Geiger’s blood type was found on Barry’s bedroom wall and mattress. Indeed, Barry admitted stabbing Geiger in what he claims was self-defense. However, the number and type of wounds as well as the position of Geiger’s body when stabbed were inconsistent with a theory of self-defense. In light of this evidence, it appears clear beyond a reasonable doubt that the jury would have returned a verdict of guilty in the absence *528 of the prosecutor’s allusion to Barry’s failure to testify in his own defense.
The judgment of conviction is
AFFIRMED.
UPCHURCH, C.J., and DAUKSCH, J., concur.

. Barry v. State, 467 So.2d 434 (Fla. 5th DCA 1985).

. This was the first of several statements made by the defendant and admitted into evidence and commented on by defense counsel and the prosecutor in their respective closing arguments.

. The second and third of these statements.