729 So.2d 947 (1998)
Lavon D. JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 97-303.
District Court of Appeal of Florida, First District.
September 28, 1998.
*948 Nancy A. Daniels, Public Defender; Angela Shelley, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Kristina White, Assistant Attorney General, Tallahassee, for Appellee.
DAVIS, Judge.
Lavon D. Jackson appeals his conviction for possession of a firearm by a violent career criminal under section 790.235, Florida Statutes (1995). Jackson asserts that his constitutional rights to due process[1] and equal protection[2] and against ex post facto laws[3] were violated by virtue of his conviction under this statute because the predicate offenses necessary to qualify him as a violent career criminal were juvenile adjudications of delinquency predating the effective date of section 790.235. He further asserts that the trial court erred in denying his motion to dismiss the jury venire after the prospective jurors were made aware that there were three other charges pending against him. We conclude that section 790.235 is constitutional, both facially and as applied to Jackson. We must nevertheless reverse and remand for retrial because the trial court erred in commenting in the presence of the jury as to other charges against Jackson which had been severed from the count for which he was being tried.
In the early morning of January 19, 1996, three police officers on foot patrol in Gainesville, Florida, saw Jackson sitting in the passenger seat of a car parked outside a tavern. As they looked through the windshield it appeared that Jackson was passed out or asleep. The officers knocked on the windows to get his attention, and used a flashlight to look for alcohol or drugs, to find out why he appeared to have passed out. Officer Forsberg saw what appeared to be a short-barrelled shotgun on the passenger floorboard. When Officer O'Neal opened the door, he saw what appeared to be another gun between Jackson's legs. Jackson was arrested *949 and searched; the police found marijuana and cocaine and shotgun shells. The gun which was between Jackson's legs was a ".357."
In February 1996, the state filed a four-count information charging Jackson with one count of possession of a firearm by a convicted felon; one count of possession of a short-barrelled shotgun; one count of possession of cocaine and one count of possession of less than 20 grams of marijuana. A second amended information was later filed, changing the charge in count one to possession of a firearm by a violent career criminal.[4] The state alleged that the prior juvenile adjudications of delinquency which satisfied the terms of that statute were an escape for which Jackson was adjudicated delinquent on 3/13/91, an armed robbery for which Jackson was adjudicated delinquent on 7/2/91, and an aggravated assault for which Jackson was adjudicated delinquent on 7/1/91. In addition, it was stipulated that Jackson had been incarcerated in the state prison system as an adult within the five years preceding the current offense, as necessary to satisfy the remainder of the requirements for classification as a violent career criminal contained in section 775.084(1)(c), Florida Statutes (1995).[5] The statute under which Jackson was convicted was enacted effective October 1, 1995. See Ch. 95-182, §§ 7, 12, at 1673, 1675, Laws of Fla.
We find no merit to Jackson's challenges to the constitutionality of section 790.235. Jackson argues that section 790.235 is arbitrary and oppressive in violation of his due process rights and violates the equal protection clause because it bears no rational relationship to the purpose of the statute. Jackson asserts that the legislature's purpose is to "get tough" on juvenile crime, but that making juvenile adjudications of delinquency elements of the crime of possession of a *950 firearm by a violent career criminal is not a rational means of achieving the state's goal. Appellant's due process and equal protection arguments are based upon the flawed premise that the legislature's only rational basis for this statute is prevention of juvenile crime. If this court can conceive of a rational basis it must uphold the statute. See McElrath v. Burley, 707 So.2d 836, 839 (Fla. 1st DCA 1998). The Florida Supreme Court has already cogently concluded that statutes limiting the right to possess guns by those who have demonstrated a propensity for violent crime serve a legitimate and rational purpose. See State v. Snyder, 673 So.2d 9, 10 (Fla.1996)("Section 790.23 is intended to protect the public by preventing the possession of firearms by persons who, because of their past conduct, have demonstrated their unfitness to be entrusted with such dangerous instrumentalities.").
Furthermore, we conclude that the statute does not violate the ex post facto clauses of the Florida or United States constitutions. "The ex post facto prohibition forbids the Congress and the States to enact any law `which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)(quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1867)). This statute was not enacted to increase the punishment for the enumerated prior offenses, nor does it make punishable an act which was not punishable when committed. As the Florida Supreme Court indicated in Snyder, the purpose of laws prohibiting convicted felons from possessing firearms is to protect the public prospectively by preventing such possession by those "who, because of their past conduct, have demonstrated their unfitness to be entrusted with such dangerous instrumentalities." In section 790.235, the legislature has created a new substantive offense which does not apply retroactively to earlier offenses but operates prospectively. Cf. State v. Ferguson, 691 So.2d 578 (Fla. 2d DCA 1997)(holding that the minimum mandatory sentence imposed pursuant to section 790.235 was not permissive, the court stated that "section 790.235 is a substantive offense statute, not a sentencing statute"). The only punishment imposed on Jackson pursuant to this statute is for the current offense, which took place after the effective date of section 790.235. Cf. Perkins v. State, 583 So.2d 1103, 1105 (Fla. 1st DCA 1991), approved, 616 So.2d 9 (Fla.1993)(rejecting ex post facto challenge to habitual violent felony offender sentencing "[b]ecause appellant's enhanced punishment is an incident of his current offense ..."). The goal of this provision was not to increase the punishment for the enumerated prior offenses, or to impose punishment for an act that was not punishable at the time it was committed, but rather, to protect the public by prohibiting the possession of firearms by persons previously convicted of, or adjudicated delinquent for, the commission of certain enumerated felonies. Jackson's act of possessing a firearm took place after the effective date of this law. Therefore, punishing him for doing so does not violate the ex post facto prohibition.
We find merit, however, to Jackson's argument that the trial court erred in denying his motions to dismiss the jury venire, and we therefore reverse and remand for a new trial. The prospective jurors were informed, albeit inadvertently, of the existence of three other counts pending against Jackson. On Jackson's motion, Count I was severed and tried separately. The state agreed not to mention anything with regard to the other counts (possession of a short-barrelled shotgun, possession of cocaine and possession of less than 20 grams of marijuana), not to introduce evidence relating to the drugs, and not to mention that the shotgun was short-barrelled. The judge presiding when those rulings and agreements were made did not preside over the trial of Count I. While the jury panel was seated and waiting for voir dire to begin, the successor judge asked the prosecutor: "Is the state presenting this matter on all four counts?" The prosecutor replied that the state was "proceeding on Count I of the information today." Jackson moved to have the panel stricken and his motion was denied. When voir dire was complete, Jackson renewed his motion to *951 strike the jury, which motion was again denied.
Jackson has a constitutional right to trial by a fair and impartial jury. See Richardson v. State, 666 So.2d 223, 224 (Fla. 2d DCA 1995). He was deprived of that right because of the possibility that the jury panel was unfairly prejudiced by virtue of their knowledge of his arrest for other crimes. See Wilding v. State, 427 So.2d 1069 (Fla. 2d DCA 1983). In Wilding the panel of prospective jurors became aware of the existence of other charges when those charges were mentioned by a member of the venire during voir dire. The court held that the prejudice from such a disclosure is almost certain to be as great as, if not greater than, the prejudice stemming from the improper disclosure of unrelated charges during the prosecution's evidence. In Pender v. State, 530 So.2d 391 (Fla. 1st DCA 1988), as in this case, the prospective jurors were informed by the trial judge about the existence of multiple charges against the defendant. In Pender the voir dire was conducted before the trial court decided to grant a requested severance, and the prospective jurors were informed that the charges against the defendant were burglary of a dwelling while armed and grand theft. In Jackson's case the successor judge was apparently unaware of the severance previously granted and mentioned the "four counts." When the court decided to sever the two charges in Pender, it erred in overruling a defense objection to utilizing the jury waiting to be sworn. Id. at 393. We conclude, as this court did in Pender, that, "applying the [State v.] DiGuilio [491 So.2d 1129, 1139 (Fla.1986)] harmless error test to the facts presented here, we cannot say beyond a reasonable doubt that the knowledge of the existing additional charges against appellant... did not affect the jury's verdict." Id.
Accordingly, we REVERSE and REMAND for a new trial.
ALLEN, J., concurs.
WOLF, J., concurs and dissents with written opinion.
WOLF, Judge, concurring in part and dissenting in part.
I concur in that portion of the opinion that holds section 790.23, Florida Statutes, to be constitutional, both facially and as applied to the defendant, Jackson. I respectfully dissent from that portion of the opinion which reverses Jackson's conviction.
There is no reasonable possibility that the verdict was affected by the inadvertent isolated remark by the trial judge concerning the existence of several other pending counts. The remark, therefore, should be found to constitute harmless error, and the verdict of the jury should be affirmed.
The defendant was tried for count I of an amended information: possession of a firearm by a violent career criminal. The state stipulated to a severance of the other three counts and that the jury would hear no evidence as to those three counts during the trial; however, on the day of trial, a different judge was presiding. In front of the jury, the trial judge inquired of the state:
THE COURT: Is the state presenting this matter on all four counts?

MS. ARROYO: Your Honor, we're proceeding on Count I of the information today.

THE COURT: Count I?

MS. ARROYO: Yes, sir.
(Emphasis added).
The defense requested that the jury panel be stricken on the basis of the above inquiry. The request was denied. The jury was never told the contents of the other three counts or offered any explanation about what it meant to have those other counts. There was no other mention of the other three counts made during the entire trial by any party or by the court. The judge instructed the jury twice that the information was not evidence of guilt.
The two major elements of the crime for which the defendant was being tried were (1) that the defendant had the prior convictions to qualify as a violent career criminal, and (2) that the defendant was in possession of a firearm. There is overwhelming conclusive evidence of both elements.
*952 To prove the first element, the state introduced certified copies of defendant's juvenile adjudications for escape, armed robbery, and aggravated assault. A fingerprint expert testified that the defendant was the person whose fingerprints were contained on the juvenile adjudications. The defense did not challenge the fact that the convictions were those of the defendant.[6] During the defendant's testimony, he also admitted that he had been convicted of two felonies as an adult. As to the second element, three police officers saw the defendant on the front passenger side of the vehicle with a shotgun on the passenger floor. All three officers testified at trial. Two shotgun shells were in the shotgun, one was found on the floorboard, and two more shells were found in Mr. Jackson's pocket. The officers also found a loaded.357 between the defendant's legs. The jury was appropriately instructed on the elements of the crime for which appellant was charged in count I, and it returned a verdict of guilty as charged.
Inappropriate comments in front of a jury do not necessarily require reversal and are subject to the harmless error analysis. See Millett v. State, 460 So.2d 489, 492-493 (Fla. 1st DCA 1984), rev. dismissed, 466 So.2d 218 (Fla.1985); Barry v. State, 504 So.2d 524, 525 (Fla. 5th DCA 1987). The harmless error analysis contained in State v. DiGuilio, 491 So.2d 1129 (Fla.1986), has been applied in a number of situations where information or evidence at least as prejudicial as that in this case has been improperly presented to the jury.[7] In Beltran v. State, 566 So.2d 792 (Fla.1990), the supreme court approved use of the harmless error analysis by the Third District Court of Appeal in a case where offenses had been improperly tried together. See also Salley v. State, 633 So.2d 1130 (Fla. 3d DCA 1994) (harmless error analysis applied where abuser profile testimony presented to jury); Hippensteel v. State, 525 So.2d 1027 (Fla. 5th DCA 1988) (harmless error analysis applied in case where prosecutor referred to defendants as punks); Goodwin v. State, 23 Fla. L. Weekly D1538, 721 So.2d 728 (Fla. 4th DCA 1998), reh'g denied (harmless error analysis properly applied in situation where police officer referred to defendant selling drugs in an area known for street sales); Smith v. State, 711 So.2d 581 (Fla. 2nd DCA 1998) (admission of inadmissible portions of video tape of defendant's confession held to constitute harmless error); Anderson v. State, 711 So.2d 230, 232-233 (Fla. 4th DCA 1998);(harmless error analysis applied in case where police officer commented on defendant's silence).
Even in Pender v. State, 530 So.2d 391, 393-394 (Fla. 1st DCA 1988), relied on by the defendant, the court applied the DiGuilio analysis to determine whether the improper admission of collateral crimes resulted in harmless error. In that case, the court found that where the jury had been informed several times of an additional burglary and petit theft pending against the appellant, a conviction for a separate burglary and petit theft could not be sustained. The Pender case can easily be distinguished. In this case, the jury was vaguely informed one time of unidentified pending charges, the jury properly received evidence of five prior felony convictions (three of which were violent felonies and had been properly identified to the jury), and the evidence of guilt properly presented to the jury was conclusive and essentially unrebutted.
In determining whether the state has proved beyond a reasonable doubt that the error did not contribute to the verdict, the jury may consider (1) overwhelming evidence *953 of guilt in light of all the circumstances which occurred at trial, see Barry, supra at 526; (2) whether the evidence which was improperly presented to the jury was cumulative, see Morris v. State, 561 So.2d 646 (Fla. 3d DCA 1990); (3) whether the error constituted a feature of the trial, see Salley, supra; (4) the magnitude of the error; and (5) whether the trial court's instructions ameliorated the seriousness of the error. An analysis of all these factors as they apply in the instant case strongly demonstrates that any error was harmless.
While a court may not consider the magnitude of evidence in isolation, the fifth district in Barry, supra, indicated the proper consideration to be given to this factor:
In Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the defendant appealed his state conviction, arguing that it should be reversed because admissions of his co-defendant deprived him of a fair trial. The Court found the error harmless and affirmed the defendant's conviction. After discussing Harrington [v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)], the court stated that:
In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.
In very few cases is the evidence as overwhelming as in the instant case.
In addition, the improper vague comment concerning remaining counts was not a feature of the trial as it was only mentioned once and never argued to the jury. While in many cases improper mention of pending cases may involve an error of great magnitude, in light of the fact that the jury was properly told of five other felony convictions and there was never any indication of the magnitude of the other pending charges, it is impossible to say that this information was prejudicial in any manner. The trial judge also instructed the jury twice that the information was not to be considered as evidence. It is hard to envision more compelling circumstances for application of the harmless error analysis.
NOTES
[1] U.S. Const. Amend. XIV, § 1; Fla. Const. Art. I, § 9.
[2] U.S. Const. Amend. XIV, § 1; Fla. Const. Art. I, § 2.
[3] U.S. Const. Art. I, §§ 9, 10; Fla. Const. Art. I, § 10.
[4] Section 790.235, Fla. Stat. (1995):

(1) Any person who meets the violent career criminal criteria under s. 775.084(1)(c), regardless of whether such person is or has previously been sentenced as a violent career criminal, who owns or has in his or her care, custody, possession, or control any firearm or electric weapon or device, or carries a concealed weapon, including a tear gas gun or chemical weapon or device, commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. A person convicted of a violation of this section shall be sentenced to a mandatory minimum of 15 years' imprisonment; however, if the person would be sentenced to a longer term of imprisonment under s. 775.084(4)(c), the person must be sentenced under that provision. A person convicted of a violation of this section is not eligible for any form of discretionary early release, other than pardon, executive clemency, or conditional medical release under s. 947.149.
(2) For purposes of this section, the previous felony convictions necessary to meet the violent career criminal criteria under s. 775.084(1)(c) may be convictions for felonies committed as an adult or adjudications of delinquency for felonies committed as a juvenile. In order to be counted as a prior felony for purposes of this section, the felony must have resulted in a conviction sentenced separately, or an adjudication of delinquency entered separately, prior to the current offense, and sentenced or adjudicated separately from any other felony that is to be counted as a prior felony.
(3) This section shall not apply to a person whose civil rights and firearm authority have been restored.
[5] Section 775.084(1), Fla. Stat. (1995):

(c) "Violent career criminal" means a defendant for whom the court must impose imprisonment pursuant to paragraph (4)(c), if it finds that:
1. The defendant has previously been convicted as an adult three or more times for an offense in this state or other qualified offense that is:
a. Any forcible felony, as described in s. 776.08;
b. Aggravated stalking, as described in s. 784.048(3) and (4);
c. Aggravated child abuse, as described in s. 827.03;
d. Lewd, lascivious, or indecent conduct, as described in s. 800.04;
e. Escape, as described in s. 944.40; or
f. A felony violation of chapter 790 involving the use or possession of a firearm.
2. The defendant has been incarcerated in a state prison or a federal prison.
3. The primary felony offense for which the defendant is to be sentenced is a felony enumerated in subparagraph 1. and was committed on or after October 1, 1995, and within 5 years after the conviction of the last prior enumerated felony or within 5 years after the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for an enumerated felony, whichever is later.
4. The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this paragraph.
5. A conviction of a felony or other qualified offense necessary to the operation of this paragraph has not been set aside in any postconviction proceeding.
[6] At trial, the defense only argued that juvenile convictions could not be utilized as qualifying offenses. The trial court and the majority correctly rejected that argument.
[7] I believe a good argument may be made that the error complained of is really not constitutional in nature and thus we should apply the lesser standard contained in Goodwin v. State, 23 Fla. L. Weekly D1538, 721 So.2d 728 (Fla. 4th DCA 1998), reh'g denied (adopted by this court in Jones v. State, No. 97-909, 715 So.2d 378 (Fla. 1st DCA 1998), in determining whether the error was harmless. See Mayes v. State, 23 Fla. L. Weekly D1995, 718 So.2d 852 (Fla. 4th DCA 1998)) (applying Goodwin standard in case where police officer's gratuitous remarks suggested prior criminal conduct by the defendant). However, the state does not argue for application of the lesser standard and since I believe that the error in this case is harmless under either test, I will not further discuss its application.