1 So.3d 1122 (2009)
Odell RUTLEDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-4398.
District Court of Appeal of Florida, First District.
January 21, 2009.
*1124 Nancy A. Daniels, Public Defender, and Alice B. Copek, Assistant Public Defender, Tallahassee, for Appellant.
Bill McCollum, Attorney General, and Charlie McCoy, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
A jury found Odell Rutledge (Appellant) guilty of two counts of engaging in sexual activity with a child 12 years of age or older, but less than 18 years old, by engaging in sexual battery (the penetration of, or union with, C.W.'s vagina by Appellant's penis) while Appellant stood in a position of familial or custodial authority over the victim, in violation of section 794.011(8)(b), Florida Statutes (2004 and 2005). Count One alleged this activity occurred between March 1, 2005, and April 30, 2005, whereas Count Two alleged this activity occurred between May 1, 2004, and May 31, 2004. Appellant was adjudicated guilty of both counts, designated a sexual predator, and sentenced to concurrent terms of 30 years' incarceration. Appellant asserts that the *1125 trial court reversibly erred by failing to comply with the requirements of Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973); Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); and Williams v. State, 110 So.2d 654 (Fla. 1959); by allowing the victim to present hearsay testimony over an objection; and by improperly commenting on the evidence in response to a question from the jury during its deliberations. We affirm the convictions and sentences.

I. The Adequacy of the Nelson Inquiry
Whether the trial court's Nelson inquiry was adequate is reviewed under the "abuse of discretion" standard. See Kearse v. State, 605 So.2d 534, 536 (Fla. 1st DCA 1992). When an indigent defendant alleges incompetent counsel, the trial court must inquire sufficiently to determine whether counsel is rendering effective assistance. "If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel the State may not thereafter be required to appoint a substitute." Nelson, 274 So.2d at 258-59. Appellant contends that the trial court abused its discretion by failing to conduct a thorough Nelson inquiry and advise Appellant that, if he discharged his court-appointed counsel, the State would not have to appoint a substitute. See Hardwick v. State, 521 So.2d 1071 (Fla. 1988).
After Appellant wrote a letter to the trial judge in January 2007 alleging the incompetence of his assistant public defender, the court scheduled a Nelson hearing. Appellant's complaints alleged: 1) that present counsel had not been forthright and helpful; 2) that counsel had not presented evidence to support a bond reduction; 3) that counsel had not visited Appellant more than once or twice or kept him apprised of what was happening in Appellant's pretrial phase; 4) that counsel had not scheduled depositions to Appellant's satisfaction; 5) that Appellant had not received certain discovery requests; and 6) that the State's evidence was fraudulent, in that certain DNA evidence indicating that Appellant is the biological father of the victim's child was refuted by Appellant's having undergone a vasectomy in 2000, before the charged crimes, and his having developed a cyst that caused him to experience sexual problems.
Defense counsel, Mr. Floyd, responded that bond was not reduced, due to the serious nature of the charges. Counsel explained that while he had presented evidence of Appellant's vasectomy, a paternity test indicated to "some degree" that Appellant had fathered the victim's child. The court noted that whether or not Appellant had a vasectomy would not necessarily affect the issue of whether he had left DNA evidence while engaging in sexual activity with the child victim, as was charged in both counts. The court noted that, when counsel needed additional time for inquiry, certain depositions were not taken according to the original schedule. After affording Appellant a fair opportunity to voice his grievances regarding defense counsel, and hearing defense counsel's responses to each complaint, the court concluded that the legal representation was not ineffective and that no valid reason had been shown for removing counsel. Because competent, substantial evidence in the record supports these findings, the trial court did not abuse its discretion. For the first time on appeal, Appellant alleges error because he was not advised that if he discharged counsel without good cause, the State would not be required to appoint substitute counsel.
Appellant wrote a second letter to the trial judge in February 2007 expressing *1126 dissatisfaction with the proceedings following the Nelson hearing. Alleging, first, that the victim had committed perjury in her deposition by fabricating allegations of Appellant's misconduct just to get rid of him, Appellant asked for an investigation as to whether perjury charges could be brought against the victim. Second, Appellant complained that prior court-appointed counsel, Mr. Parker, had allowed a continuance and waived speedy trial without Appellant's consent. Third, Appellant complained that his bail amount was excessive. Appellant argues that his second letter should have prompted a second inquiry under Nelson.
Appellant has not shown an abuse of discretion in the trial court's failure to schedule a second inquiry. The allegation of the victim's perjury had nothing to do with defense counsel's performance. The matter of a different attorney's having waived speedy trial and allowed a continuance did not call into question the effectiveness of present counsel, who acknowledged at the Nelson hearing that speedy trial had been waived. Appellant did not argue this matter at the Nelson hearing when he had the opportunity to do so. The reasons for the continuance and the bail amount were explained during the inquiry and were found valid. Therefore, Appellant's second letter did not trigger the need for further inquiry under Nelson.
On appeal, Appellant does not contest either the trial court's conclusion that court-appointed counsel was not ineffective or its decision not to discharge counsel. Instead, he argues, for the first time, that the trial court erred by not informing Appellant that if defense counsel were discharged without good cause, the State would not be required to appoint a substitute. The court should have advised Appellant thus. See Knight v. State, 770 So.2d 663, 665, 667-68 (Fla.2000); Gudinas v. State, 693 So.2d 953, 961-62 & n. 11 (Fla.1997); Hardwick, 521 So.2d at 1074-75; Rios v. State, 696 So.2d 469, 471 (Fla. 2d DCA 1997); Taylor v. State, 557 So.2d 138, 143 (Fla. 1st DCA 1990), disapproved of on other grounds, Heuss v. State, 687 So.2d 823, 824 (Fla.1996); Nelson, 274 So.2d at 259. In Matthews v. State, 584 So.2d 1105, 1106-07 (Fla. 2d DCA 1991), the appellate court set this procedure out as a requirement:
If the court finds that the defendant, as in this case, has no legitimate complaint, it is then required to advise the defendant that if his request to discharge his attorney is granted, the court is not required to appoint substitute counsel and the defendant would be exercising his right to represent himself.
The record supports the State's contention that Appellant never indicated to the trial court a desire to represent himself. The State correctly asserts that, without a timely objection and specific argument at the Nelson hearing, Appellant must demonstrate fundamental error in the court's failure to inform him that the State would not have to appoint a substitute lawyer following a discharge of effective counsel without good cause. See Harrell v. State, 894 So.2d 935, 940-41 (Fla.2005).
This Court's opinion in Taylor, 557 So.2d at 138, supports Appellant's argument that the trial court's failure to advise constitutes error. In Taylor, when the defendant indicated his desire to discharge court-appointed counsel, the trial court conducted a Nelson inquiry and found the attorney was rendering effective representation. See id. at 143. Citing Faretta, this Court stated:
The trial judge erred in failing to advise Taylor that his attorney could be discharged but the state would not be required to appoint substitute counsel and *1127 that Taylor had the right to represent himself.
557 So.2d at 143. Because the State did not argue in Taylor that the trial court's omission was harmless error, the panel concluded that the State had not met its burden under State v. DiGuilio, 491 So.2d 1129 (Fla.1986), and Taylor's judgment/sentence was reversed and the case remanded. See Taylor, 557 So.2d at 144. However, in Heuss, the Supreme Court of Florida addressed an express and direct conflict involving Taylor and concluded that "the State's failure to argue harmlessness does not preclude an appellate court from applying the harmless error test, though it is not required to do so." Heuss, 687 So.2d at 824. Although the Supreme Court disapproved of Taylor in that regard, the holding remains good that the trial court erred by failing to advise Appellant that, if he discharged defense counsel without good cause, the State would not have to provide a substitute lawyer. The State convincingly asserts that any error in the failure to advise is harmless beyond a reasonable doubt, given the facts that Appellant did not challenge the finding of effective representation and never expressed a desire to represent himself.

II. The Failure to Conduct a Faretta Hearing
Appellant argues that the trial court erred by not conducting a Faretta hearing after Appellant continued to complain about court-appointed counsel and filed pro se pleadings in the trial court and in this Court. The trial court's ruling on the issue of self-representation is reviewed for an abuse of discretion. See Kearse, 605 So.2d at 536.
In Rios, the Second District Court stated that, during a Nelson inquiry, "[i]f court-appointed counsel is found to be rendering effective assistance and the defendant insists that he still wants to discharge him or her, a Faretta hearing is in order." 696 So.2d at 471. When the trial court rejected the claim of ineffective representation at the full Nelson hearing, Appellant did not then insist that he still wanted counsel to be discharged. Therefore, according to the State, Appellant never triggered the need for a Faretta hearing.
In Matthews, 584 So.2d at 1106-07, the Second District Court noted that after the trial court advises a defendant appropriately that if the request to discharge effective counsel is granted, the State does not have to appoint substitute counsel and the defendant would be representing himself the defendant can make his or her wishes known. "At this point, if the defendant still desires to discharge his counsel, the court must determine whether the defendant is knowingly and intelligently waiving his right to court appointed counsel" according to Faretta. Matthews, 584 So.2d at 1107. The State correctly notes that when the trial court found defense counsel effective, Appellant never expressed at that hearing any desire to represent himself. However, several weeks after the Nelson hearing, Appellant wrote a second letter to the court complaining about his attorney's performance. Appellant argues that after his continuing (meritless) complaints about defense counsel, the trial court erred in failing to conduct a Faretta hearing to determine whether Appellant was knowingly, intelligently, and voluntarily waiving his right to court-appointed counsel.
Faretta involved a defendant who made a timely, clear, and unequivocal declaration to the trial court that he wanted to represent himself and did not want counsel. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525. To trigger a Faretta inquiry, a defendant's assertion of the right to self-representation must be unequivocal. See *1128 Tennis v. State, 997 So.2d 375, 376 (Fla. 2008). Appellant ignores the fact that, unlike Mr. Faretta, he never clearly and unequivocally asked to represent himself or indicated that he did not want an attorney. In Augsberger v. State, 655 So.2d 1202 (Fla. 2d DCA 1995), the defendant waited until the commencement of jury selection to advise the trial court that he did not think court-appointed counsel had served him right or done what he was supposed to do. Mr. Augsberger requested an opportunity to hire his own attorney. The court determined that the defendant did not have the necessary funds to hire a replacement lawyer and that appointed counsel was competent. The original lawyer remained on the case, and the defendant was convicted. See id. at 1203. Citing Matthews, Mr. Augsberger (like Appellant) argued on appeal that the trial court had erred in failing to conduct an adequate Faretta hearing regarding the request to discharge counsel and in failing to advise the defendant of his right to self-representation. See 655 So.2d at 1203. The Second District Court rejected Mr. Augsberger's argument, concluding that "the trial court's failure to advise appellant of his right to self-representation does not mandate reversal. Appellant never made an unequivocal request for self-representation, which is the essential prerequisite for a Faretta inquiry." Id. at 1205. Likewise, because Appellant never indicated in any manner whatsoever that he did not want an attorney and that he desired to represent himself, the facts did not trigger the need for a Faretta inquiry, and Appellant has not shown an abuse of discretion in the failure to hold such a hearing.
For additional support of the trial court's handling of the proceedings, the State offers Bell v. State, 699 So.2d 674 (Fla.1997), in which the trial court held adequate Nelson hearings on the defendant's complaints about court-appointed counsel. See id. at 676. Where Mr. Bell never asserted clearly and unequivocally that he wanted to represent himself, the Supreme Court of Florida held that no Faretta hearing was required. See id. at 677; Brooks v. State, 762 So.2d 879, 889 (Fla.2000) (stating that because the defendant never unequivocally asserted the right to self-representation during a hearing on appointed counsel's motion to withdraw, no Faretta inquiry was needed).

III. The Admission of Hearsay Testimony Over an Objection
Appellant asserts error in the trial court's allowing the victim to testify that, after she took a pregnancy test, her doctor's office told her that she probably was 25-26 weeks pregnant at the time of her office visit. Count One charged Appellant with engaging in sexual activity with the victim sometime from March 1, 2005, through April 30, 2005, based on the gestation of the child, who was born in January 2006. No medical personnel testified regarding the approximate date of the child's conception or whether Appellant's pregnancy was for a normal term. Appellant argues that the hearsay statement introduced through the victim's testimony was offered to prove the truth of the matter asserted and did not fall within any statutory exception to the hearsay rule. The parties agree that whether the trial court's admission of evidence comports with the Florida Evidence Code and the applicable case law is reviewed de novo. See McCray v. State, 919 So.2d 647, 649 (Fla. 1st DCA 2006).
Hearsay statements are inadmissible absent an applicable exception. See § 90.802, Fla. Stat. (2005); State v. Freber, 366 So.2d 426 (Fla.1978). The State argued at the trial that the "state of mind" hearsay exception in section 90.803(3), *1129 Florida Statutes (2005), applied, and defense counsel's objection was overruled. The State properly concedes on appeal that this ruling was wrong, for this hearsay exception did not apply. The "declarant" was the medical personnel at the doctor's office who had spoken to the victim. The "state of mind" exception allows admission only if "the declarant's state of mind is at issue." Correll v. State, 523 So.2d 562, 565 (Fla.1988); see Bailey v. State, 419 So.2d 721, 722 (Fla. 1st DCA 1982). The medical personnel's state of mind was not at issue, and neither was the victim's state of mind. The statements could not be used to prove a "state of mind" as to when the child was thought to have been conceived. However, the record refutes Appellant's contention that allowing the jury to hear the victim's testimony over an objection denied Appellant his right to a fair trial.
Admitting the victim's hearsay testimony regarding the doctor's office's estimate of how far along she was in her pregnancy is harmless error. The victim testified that she discovered her pregnancy while in tenth grade. Her baby was born on January 10, 2006, indicating to the victim that most of the gestation period was in 2005. The victim testified that she did not have sexual activity with anyone other than Appellant. She testified that hers was a normal and healthy pregnancy, including a normal term. From this testimony, the jury could reasonably infer that the child was conceived a "normal" time before January 10, 2006, i.e., approximately nine months earlier and within the time frame charged in Count One: between March 1, 2005, and April 30, 2005. The evidence supporting Count Two (alleging sexual activity between May 1, 2004, and May 31, 2004) includes the victim's testimony that, in May 2004, she had undergone a medical procedure involving the removal of a mass from her right breast, after which she wore bandage wraps. She recalled Appellant's engaging in sexual activity with her during the period following the surgery when she was still bandaged.

IV. The Adequacy of the Williams Rule Inquiry
Appellant argues on appeal that the trial court violated due process by failing to conduct a thorough balancing test pursuant to section 90.403, Florida Statutes (2005), before admitting collateral-crime evidence. Ordinarily, we review the trial court's inquiry for an abuse of discretion. See Taylor v. State, 855 So.2d 1, 22 (Fla.2003).
The State filed notice of intent to offer evidence of other crimes, wrongs, or acts committed upon the same victim by Appellant in Bossier Parish, Louisiana; and in Alachua County and/or Orange County, Florida. At a hearing and over a defense objection, the prosecutor told the trial court what information the State sought to introduce from the victim as Williams Rule evidence. See Williams, 110 So.2d at 654. Section 90.404(2)(b), Florida Statutes (2005), states:
(2) OTHER CRIMES, WRONGS, OR ACTS.
* * *
(b)1. In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
2. For the purposes of this paragraph, the term "child molestation" means conduct proscribed by s. 794.011 or s. 800.04 when committed against a person 16 years of age or younger.
The prosecutor noted that although "propensity" evidence still is not allowed under *1130 statutory subsection (2)(a), Appellant's charged crimes fall within the amended subsection (2)(b) language because the offenses are a violation of section 794.011, Florida Statutes (2005), and constitute "child molestation." Noting that propensity is now admissible, the trial court correctly acknowledged that the law still requires the court to conduct a balancing inquiry pursuant to another safeguard evidentiary provision, section 90.403, Florida Statutes (2005), which states:
90.403 Exclusion on grounds of prejudice or confusion.Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. This section shall not be construed to mean that evidence of the existence of available third-party benefits is inadmissible.
At the commencement of trial, the hearing allowed a full evaluation of the Williams Rule evidence the State intended to introduce. Defense counsel acknowledged that the applicable version of section 90.404(2)(b), supra, allows the introduction of propensity evidence, yet the trial court still must accord with due process by performing an adequate balancing test to assess probative value versus unfair prejudice, confusion of issues, misleading the jury, and unnecessary cumulative evidence. See McLean v. State, 934 So.2d 1248, 1262 (Fla.2006). The State correctly notes that defense counsel raised three objections in the trial court but never argued that the court's balancing test was inadequate and incomplete. Therefore, absent a specific objection on the ground now argued on appeal, Appellant must show fundamental error arising from the admission in evidence of the two prior incidents of sexual activity between Appellant and the victim of the charged crimes. He has not met his heavy burden to demonstrate fundamental error.
Any error in the balancing test is harmless, given that the factors enunciated by the Supreme Court of Florida in McLean, 934 So.2d at 1262, are satisfied by the collateral-crime evidence relating to the prior acts of sexual activity between Appellant and the same victim. McLean states that the section 90.403 balancing test involves the following assessment:
In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charged; (3) the frequency of the prior acts; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.
Id. Although the trial court did not expressly address these four McLean factors, it reached the right result. The evidence of the prior sexual acts demonstrated they were similar in all pertinent respects, the timing was sufficiently close, and the prior acts were repeated.
Specifically, the victim testified that when she was 12 years old and lived in Bossier City, Louisiana, with her mother, Appellant, and her younger brother, Appellant entered the victim's room one night and told her to go to her parents' bedroom. He gave her a choice of being beaten or removing her underwear. When Appellant tried to stick his penis into her, the victim ran down the hall. Appellant told the victim that he loved her very much and *1131 that she looked like her mother (Appellant's wife). The victim's mother testified that the family had moved to Bossier City in July 2002. Other incidents occurred in Louisiana in Appellant's bedroom, where Appellant forced the victim to have sex on the floor and placed his penis in her vagina. This occurred about twice a week while the victim's mother was at work. Subsequently, the family moved to Gainesville in August 2003, when the victim was in the eighth grade. Appellant engaged in the same kind of sexual activity with the victim in Gainesville.
Pursuant to McLean, 934 So.2d at 1262, before allowing the collateral-act evidence to be heard by the jury, the trial court concluded that clear and convincing evidence proved Appellant's commission of the previous sexual acts upon the victim. The court noted that the "extraordinary other evidence" in this case is the birth of the victim's child, which has "very high probative value" and corroborates the victim's testimony that the illegal sexual activity with Appellant occurred. The court noted also that the State already had informed the court that DNA evidence would indicate a 99.9999% probability that Appellant is the biological father of the victim's child, and that the chance of Appellant's not being the father is one in 4.1 million. In concluding that this other evidence is admissible, the court warned the prosecution that collateral-crime evidence should not become a feature of the trial. The trial court correctly instructed the jury on the proper use of the prior act evidence when it was introduced in evidence. The collateral-crime evidence did not become a feature of Appellant's trial.
Affirmance of the trial court's ruling is appropriate if the trial court reached the right result, even if for a different or wrong reason, so long as some basis exists in the record to support the judgment. See Robertson v. State, 829 So.2d 901, 906 & n. 2 (Fla.2002). The trial judge, the prosecutor, and defense counsel demonstrated a clear understanding of the requirements of section 90.404(2)(b)1., Florida Statutes (2005), as enunciated further in McLean. Appellant failed to preserve the specific issue of whether the balancing analysis was thorough enough to satisfy due process. The collateral-crime evidence is sufficiently similar in all key respects to the evidence of the charged crimes to satisfy the relevance requirement for admissibility. See McLean, 934 So.2d at 1259. The similarity of the prior acts to the charged crimes in material respects, the closeness in time of the collateral acts and the charged crimes, and the frequency of the prior acts lead ineluctably to the conclusion that the probative value of the evidence of previous child molestation of the same victim of the charged crimes substantially outweighs the danger of unfair prejudice. See id. at 1262. The State has met its burden under DiGuilio, 491 So.2d at 1138, to show that error, if any, in the trial court's assessment of the evidence before admitting the collateral-crime evidence is harmless beyond a reasonable doubt.

V. The Trial Judge's Response to a Jury Question
Implicitly acknowledging that this issue was not preserved with a contemporaneous objection, Appellant argues that the trial court committed fundamental error by commenting on the evidence, in response to a jury question. Appellant relies on case law stating that a trial judge errs by making a comment in the jury's presence that might convey his or her view of the case or opinion as to the weight, character, or credibility of the evidence. See Simmons v. State, 803 So.2d 787, 788 (Fla. 1st DCA 2001). In such instances, *1132 the error is so prejudicial to the defense that it cannot be extinguished with a curative instruction. See id. at 789.
Appellant contends that the trial court violated this prohibition by commenting on the weight of the evidence in answer to a jury question. While deliberating, the jury referred to Florida Standard Jury Instruction (Criminal) 3.12(a) and asked: "[I]s the evidence presented in the trial applicable to all counts?" The judge then convened the parties to discuss an appropriate response, to which they agreed, and the jury was brought back into the courtroom for the answer. Without an objection, the judge commented:
Your job really is to take all the relevant evidence that you've been presented and then decide what you believe and then take those facts and apply it to each count separately. Some of the evidence you've heard may apply to both counts. Some of it would apply to one count but not the other. Then, of course, you wouldn't consider that for that other count that it's not relevant to. Am I making sense so far?

Hopefully, everything you've heard would be relevant to everything. Otherwise, I didn't do my job because you're only supposed to get relevant evidence. So once you decided what you really believe, just see which of the counts it's relevant to and which it's not. And if it's not relevant to a count, then just don't consider it for that count. I think when you go through this, you'll find that it's not as mysterious as it seems. It's really just nuts and bolts stuff when you get down to the point of applying what facts you believe to each count. Everybody understand the answer?
The jury nodded affirmatively. Appellant argues that the judge's remarks about the relevancy of the evidence essentially instructed the jury that he hoped it would find (as he had done) that all the admitted evidence was relevant to everything. Appellant concludes that this prejudicial judicial response might well have affected the verdict. Within ten minutes of the court's response, the jury reached a verdict. Where any doubt is raised that an accused was prejudiced by a judge's remark, a new trial is warranted. See Beckham v. State, 209 So.2d 687, 688 (Fla. 2d DCA 1968).
The State responds that both attorneys indicated they were satisfied with the trial court's response. Appellant focuses on appeal upon just a small portion of the judge's full and complete answer to the jury's question. Section 90.106, Florida Statutes (2005), states that a judge "may not sum up the evidence or comment to the jury upon the weight of the evidence, the credibility of the witnesses, or the guilt of the accused." The court's comments did not mention any fact or event of the trial, mention specific evidence, identify a witness, or refer to a particular ruling. The remarks said nothing about credibility or guilt. The remark expressed only "hope" that the evidence heard "would be" relevant. The statement did not suggest that any specific evidence was relevant, only that it was "supposed" to be. Thus, the judge did not improperly "comment" upon the evidence. At most, the remarks hinted there could be some (unidentified) irrelevant evidence the jury was mistakenly allowed to hear.
Error, if any, in the judge's remarks is harmless under DiGuilio. The comments at issue were singular and brief in the middle of a longer, uncontested response to a jury question. The question arose after the close of all evidence and during jury deliberations, so the court's answer would not have been associated with a particular witness or evidence. Appellant does not contend that the court's overall response was erroneous or misleading. *1133 The State notes that this brief comment pales in comparison to four judicial remarks that were nonetheless found harmless in Millett v. State, 460 So.2d 489, 492-93 (Fla. 1st DCA 1984). By definition, any harmless error cannot constitute fundamental error. See Reed v. State, 837 So.2d 366, 370 (Fla.2002).
For all of these reasons, Appellant's convictions and sentences are AFFIRMED.
WOLF, J., concurs and BENTON, J., concurs in the judgment with opinion.
BENTON, J., concurring in judgment.
I fully agree that fundamental error did not occur at appellant's trial.